376 So.2d 1024 (1979)
George RYLE et ux.
v.
BATON ROUGE GENERAL HOSPITAL.
No. 12792.
Court of Appeal of Louisiana, First Circuit.
October 8, 1979.
*1025 Gordon M. White, and John Olin Brown, Baton Rouge, of counsel for plaintiff-appellant George Ryle et ux.
David Robinson, Baton Rouge, of counsel for defendant-appellee Baton Rouge General Hospital.
Before COVINGTON, LOTTINGER and COLE, JJ.
COVINGTON, Judge.
The plaintiffs-appellants, George Ryle and Dorothy Ryle, devolutively appeal the judgment of the trial court rejecting their demands for damages arising out of personal injuries sustained by Mrs. Ryle when she tripped and fell in the parking lot of the defendant, Baton Rouge General Hospital.
The record reflects that on September 14, 1975, Dorothy Ryle, in the company of her husband and other family members, went to the Hospital for the purpose of visiting her son who was a patient there. Upon their arrival, the Ryles parked their automobile in the front parking lot located between Florida Boulevard and the main entrance to the Hospital. The Ryle group then walked down one of the travel lanes of the parking lot, proceeded up the raised embankment in front of the defendant, followed along the sidewalk and entered through the main entrance. They went to their son's room, where they visited with him until visiting hours were over at about 9:00 P.M. Upon leaving, the Ryles exited through the main entrance and headed in the general direction of their parked automobile. However, instead of returning the same way they had come, they descended the raised embankment by way of the steps in front of the main entrance.
As the Ryle group approached their automobile, Dorothy Ryle tripped over one of the bumper guards or medians in the parking lot and fell, causing the serious injuries to her leg complained of in the instant suit. In her petition, she alleged that the cause of the accident and resulting injuries was that "the said parking lot is partitioned with raised unmarked barricades and is not lighted at night for pedestrian traffic thus making the barricades impossible for the normal pedestrian traffic to visualize." The injury to Mrs. Ryle's leg was severe; following a course of treatment in and out of the hospital, it finally became necessary to amputate her right leg below the knee. Subsequently, she was fitted with a prosthesis and appears to have recovered uneventfully to the extent possible under the circumstances.
Mrs. Ryle, 54 years old at the time of the accident, stated that she and her husband came down the front steps together. She described what then occurred as follows:
"Q. When you fell, did you see any car at all?
A. No, sir, I never noticed it. All I knew I was falling and I was going to be hurt.
Q. You never saw what you tripped on?
A. No, sir, I did not see the median at all.
Q. Did you see it after you fell?
A. I hadI had no reason, I was in pain lying on the ground. My greatest concern was to get help.
Q. You didn't see it after you fell?
A. No, sir.
Q. So, until you were taken into the hospital, into the emergency room, you never saw this median that you tripped on?
A. I wasn't paying that attention, I was suffering so with my foot.
Q. Did you ever go back to look at it after that?
A. No, sir.
Q. When you went down the steps, were those steps lighted so you could see? *1026 A. Yes, they was, they certainly was.
Q. When you got down to the bottom of the steps was it lighted down there?
A. A little bit, yeah.
Q. As you walked out
A. The further away the darker it got.
Q. And you kept walking?
A. Yes, sir.
Q. Did you reach a point before you fell where you really couldn't see where you were going?
A. No.
Q. You could always see where you were going?
A. Yes, I was looking down, all was black. That's what made me hit it. If it had that yellow color like y'all got now, I could have seen it.
Q. You were looking down
A. That's right.
Q. As you were walking; is that correct?
A. That's right.
Q. And was it dark or was it when were you able to see when you were walking?
A. I was just judging from the black concrete that I was walking on.
Q. But you still couldn't see any cars. That brings us to this question, were you looking straight down where you were walking or were you looking ahead of where you were walking?
A. Well, I guess I was looking ahead and where I was walking, too."
Mr. Ryle testified that his wife was a short distance in front of him, but he did not actually see her fall. None of the witnesses saw Mrs. Ryle fall and none could say that a bumper guard or median caused her to trip and fall. There was no expert testimony concerning the design or construction of the parking lot with bumper guards in this fashion. There was some conflicting testimony concerning whether or not the lot was lighted, but the trial judge resolved this question in favor of the Hospital. We accept and independently confirm the factual finding that the parking lot was adequately lighted at the time of the accident. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The appellants contend that liability of the Hospital should be based on Civil Code Article 2317 as interpreted in the case of Loescher v. Parr, 324 So.2d 441 (La.1975). We do not agree. This is not a Loescher situation. Loescher limited the concept of "things" which form the basis of strict liability under Article 2317 to "defective" things which create "an unreasonable risk of harm to others." See 324 So.2d at 446; Note, The "Discovery" of Article 2317, 37 La.L.Rev. 234, 239 (1976). There is no evidence to indicate that the bumper guards were defective in any way which could have caused Mrs. Ryle to fall.
The mere fact that the accident happened does not create a presumption of the defendant's negligence. The duty owed by the hospital to patients' visitors is that of exercising reasonable care for their safety. Himel v. Ryder, 146 So.2d 209 (La.App. 3 Cir. 1962); Lusk v. United States Fidelity & Guaranty Co., 199 So. 666 (La.App.Orl. 1941); Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976).
We are not convinced that the Hospital failed to exercise reasonable care under the circumstances of this case. The trial judge in his Written Reasons for Judgment stated:
"A series of photographs introduced by plaintiffs designated as P3, 4 and 5 were for the purpose of showing that the bumper guards were not painted in the area where Mrs. Ryle fell. The parking lot did have dividing lines which were clearly visible on the asphalt. These lines terminated directly at the edge of the bumper guards. In the Court's opinion these lines and bumper guards should have been clearly visible to Mrs. Ryle since, according to the testimony, there were no other vehicles to block her view between the Ryle vehicle and the stairs *1027 down which the group descended. The photos P4 and P5, while not being too helpful in showing the exact scene where the accident occurred, do indicate the lighting provided in the area. That lighting consisted of one bonnet light situated next to the steps which Mrs. Ryle had just used and which was approximately 20-25 feet from the site of the accident. There also is a spotlight shown in P4 about 30 feet from the accident scene.
"Mr. Thomas Sawyer, Vice-President of the hospital corporation in charge of plant operation and security, testified that the lighting is checked nightly by the security personnel and any defective lighting is reported for correction. He further testified that no such report was made during the period in which the said accident occurred. According to Mr. Sawyer, all of the parking lot lights are activated by a photo-electric cell and are powered by the same source; therefore, if one of the lights was on it necessarily follows that all of them were on. Plaintiffs conceded on the trial of the matter that the bonnet light referred to was on. It therefore follows that all the other lights were also on. The Court concludes that the parking lot was adequately lit at the time of Mrs. Ryle's injury; therefore, the lighting was not the cause of Mrs. Ryle's accident."
The record reveals that there was no expert testimony or other evidence to show any basis for concluding that the design, construction or maintenance of this parking lot created a hazardous or dangerous condition. On the contrary, the evidence convincingly shows that the premises were kept by the Hospital "in a reasonably safe condition." Miller v. Broadmoor Village, Inc., 321 So.2d 925 (La.App. 1 Cir. 1975), writ denied, 325 So.2d 276 (La.1976).
The testimony in the record supports the conclusion reached by the trial judge that the defendant was free from fault. Loomis v. Highland Hospital, Inc., 274 So.2d 198 (La.App. 2 Cir. 1973). Accordingly, we affirm the judgment appealed at appellants' costs.
AFFIRMED.