434 So.2d 487 (1983)
Mary ROBINSON, Plaintiff-Appellant,
v.
GULF INSURANCE COMPANY, et al., Defendants-Appellees.
No. 15415-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
Writ Denied September 30, 1983.
*488 Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendants-appellees.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
Plaintiff, who slipped on sputum and fell in the hallway of a nursing home where she was visiting, appeals a judgment rejecting her demands for personal injury damages.
Plaintiff urges that we should ease her burden of proving fault of the nursing home by equating her situation to that of a customer in a retail store.[1] Whether the nursing home's liability is founded in strict liability type of fault or in negligence, the legal analysis is similar and concerns the reasonableness of the conduct of the nursing home employees in maintaining a reasonably safe place for its patients and visitors. The ultimate issue is whether the evidentiary burden of a plaintiff should be facilitated by the circumstances shown by this record. See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Entrevia v. Hood, 427 So.2d 1146 (La.1983). See also Malone, "Ruminations on Liability for the Acts of Things", 42 L.L.R. 979 (1982). We affirm.
*489 About 10:20 a.m. on a Sunday, the 83-year-old plaintiff, accompanied by one sister, went to the nursing home to visit another sister who was confined there. When they traversed the central area of the home near the nurse's station, plaintiff slipped on sputum and broke her left femur. She had visited the home before and had not noticed any foreign substance on the hallway floor.
The area where plaintiff fell is one of the more traversed areas of the home, which is made up of four wings in the shape of an X with the nurse's station being in the center of the X. It was not shown how long the sputum had been on the floor before plaintiff fell.
One nurse testified that about ¼ of the elderly patients in the home have "drooling" problems. At about 18 meetings a year, the employees are instructed to be constantly on the lookout for saliva or other excretions from patients on the floor of the home. Each employee carries paper tissues to attend to minor clean-ups and is instructed to guard the more serious and larger deposits until the cleanup crew attends to the deposit.
The cleanup crews mop and clean the hallways and rooms daily and remain on duty to attend to the deposits which might require their attention. The trial court expressly noted that "the record is replete with the testimony that the nurses in their regular movements around the nursing home, as well as all other employees, were constantly looking for any foreign objects on the floor, and when they were seen they were picked up if they could be picked up, or a sign was immediately posted over them and a maid dispatched to clean up."
The shift supervisor testified that she regularly traversed the area where plaintiff fell about 100 times during each eight-hour shift and that she constantly looked for and attended to sputum and other deposits which might be on the floor.
A nursing home's duty to its patients does not include having an attendant follow an ambulatory patient at all times. Tait v. Western World Insurance Company, 220 So.2d 226 (La.App. 3d Cir.1969), writ ref.; Murphy v. Allstate Insurance Company, 295 So.2d 29 (La.App. 2d Cir.1974). Its duty should be similar to that owed by a hospital to patients and visitors. Blank v. Our Lady of the Lake Hospital, 241 So.2d 262 (La.App. 1st Cir.1970).
The trial court mentioned nine witnesses, including a clergyman, who visited regularly or who worked in this home, who testified to the effect that the premises were constantly inspected, immaculate, nice, and clean.[2] The trial court concluded that defendant exercised reasonable care to keep its floors and travel areas clean and in a reasonably safe condition and that the constant inspection by all personnel exceeded periodic inspections by designated personnel. The factual findings of the trial court are supported by the record and we cannot say that the conclusions drawn from these findings are legally unfounded.
Obvious differences exist between a nursing home and a retail store. Factors which determine the liability of a retailer (the type and manner of display of merchandise, the nature of customer service, the volume of business and customer traffic) simply cannot be squarely considered in determining the liability of a nursing home whose visitors are not customers and whose attention is not purposely diverted from the floor. Gonzales, supra. A nursing home owes its patients a reasonable standard of care. Nichols v. Green Acres Rest Home, Inc., 245 So.2d 544 (La.App. 3d Cir.1971). Certainly a nursing home's duty to its visitors should be no greater or no less. See *490 Ryle v. Baton Rouge General Hospital, 376 So.2d 1024 (La.App. 1st Cir.1979). In this instance, as in Blank, supra, plaintiff simply failed to prove that the defendant had actual or constructive knowledge of the hazardous condition (here the sputum) for such time that removal of the hazard or warning of its existence should have been effected. See also Perkins v. Springhill General Hospital, 278 So.2d 900 (La.App. 2d Cir.1973).
For detailed reasons given by the trial court, as here summarized and supplemented, we AFFIRM.
NOTES
[1] Our courts have noted that an increased risk to a customer is created when the retailer purposely displays his merchandise at eye level to attract the customer's attention, and have held that the retailer's duty to minimize the risk of foreign objects on the floor should be correspondingly increased. This increased duty includes the responsibility of taking protective measures such as periodic and frequent inspections and clean-ups. Where a customer shows that her slip was caused by a foreign substance on the retailer's floor, our courts have held that the duty of presenting evidence to exculpate the retailer's employees from fault shifts to the retailer. Kavlich v. Kramer, 315 So.2d 282 (La. 1975); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La. 1976).
[2] We find that the record supports these factual conclusions of the trial court, which obviously are not clearly wrong:

"In addition, defendants offered the testimony of a ... Priest, ... who ... found it to be a nice, clean establishment... [Another visitor], whose mother also was a resident of Pilgrim Manor, testified the premises were immaculate. The defendants offered the testimony of ... employees to the effect that the place was kept clean, and constant inspections occurred as the employees moved about the premises on their regularly assigned duties."