839 So.2d 357 (2003)
Gloria Millet, Wife of/and Walter MILLET
v.
EVANGELINE HEALTH CARE, INC.
No. 02-CA-1020.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*358 John J. Rabalais, Janice B. Unland, Robert T. Lorio, Laurie W. Maschek, Covington, LA, for Defendant-Appellant, Evangeline Health Care, Inc.
christopher T. Grace, Jr., Metairie, LA, for Plaintiffs-Appellees, Gloria Millet and Walter Millet.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
This is a slip-and-fall personal injury case. The defendant appeals a judgment that awarded the plaintiff general damages in the amount of $100,000.00, reduced by forty percent for comparative fault. We affirm.
The accident occurred on August 10, 2000. Gloria Millet (hereafter "Millet") *359 was visiting her brother at Evangeline of Ormond, a nursing home in which he was a patient. As Millet walked out of her brother's room, she fell and injured her knee, fracturing her left patella. This resulted in two surgeries, a lengthy recuperative period, and residual injury.
Millet filed this suit against Evangeline Health Care, Inc., owner of the nursing home (hereafter "Evangeline"). Her husband, Walter Millet, joined as plaintiff to recover for loss of consortium. After trial without a jury, the trial court rendered judgment in favor of the plaintiffs, awarding Gloria Millet $100,000.00 in general damages and $14,185.35 in special damages, a total of $114,185.35, reduced by her forty percent comparative fault to $68,478.51. The judgment also awarded Walter Millet $3,000.00 for loss of consortium, as well as giving the plaintiffs legal interest from date of demand and sixty percent of all costs.
Pursuant to Evangeline's post-trial request for written reasons for judgment, the trial judge read his findings of fact and conclusions of law into the record in open court. Evangeline appealed.
On appeal Evangeline asserts the trial court erred in finding that Millet sustained her burden of proving negligence on Evangeline's part and in finding Millet entitled to $100,000.00 in general damages.[1]

FACTS
On August 10, 2000, Gloria Millet was visiting her brother, a resident of the defendant's nursing home, Evangeline of Ormond. After approximately 20 minutes Millet exited her brother's room into the hallway. As she was leaving the room, Millet was looking back towards her brother, who was lying in his bed; apparently she was talking to him while she was going out the door. Millet slipped and fell on a wet floor near or adjacent to her brother's room. As a result of her fall, Millet sustained a transverse comminuted fracture of her left patella, i.e., she shattered her left kneecap.
In lengthy and thorough reasons for judgment, the trial court found the evidence established that one of Evangeline's employees had mopped the floor in the hallway of the nursing home prior to Millet's slip-and-fall. There were "wet floor" signs down the hallway from Millet's brother's room 20 to 25 feet away, near the nurse's station, but not in the area where Millet fell.
The trial judge specifically stated he found Millet's testimony credible. He referred to Millet's testimony that the floor was "very wet" and that there were no "wet floor" warning signs either in the area where she fell or nearby that would have put her on notice to take special precautions and to be more careful.
The judge also believed Millet's testimony that one of Evangeline's employees (a nurse named Rowena Jones who came to assist plaintiff after she fell) said, "Where are my warning signs?" The judge noted that Evangeline did not call Rowena Jones to testify and that Millet's testimony regarding Jones' statement was not refuted by any other witness called by the defense. The judge concluded that the warning signs were not placed in a strategic area near enough to have effectively warned Millet that the floor was wet. The judge also believed that warning signs shown in photographs entered into evidence as defense exhibits had been placed by Evangeline's employees after Millet fell. He also *360 found that the warning signs were located down the hallway near the nurse's station, which was not close enough to effectively warn Millet of the wet area of the hallway.
The judge referred to testimony of John Convoy, the nursing home's administrator, that the janitor had recently mopped the hallway floor. The judge pointed out that fact is verified by the accident report filed in evidence. Although Convoy testified that he saw warning signs in place when he arrived, the judge found that the warning signs had been placed in position after Millet's fall rather than before.
The judge also stated he heard no evidence that any of Evangeline's employees verbally notified Millet that the hallway had been recently mopped while she was visiting in her brother's room. The judge concluded that Millet "had no effective notice either by warning sign or by verbal announcement or notice from one of Evangeline's employees that the hallway was wet before she walked into it."
The trial judge concluded that Evangeline was sixty percent at fault because Evangeline created an unreasonable risk of harm by failing to warn Millet of the recently-mopped wet floor in the hallway next to her brother's room. The judge found it was "reasonably foreseeable that Millet might slip and fall and injure herself while walking into the hallway if she had not been properly and effectively notified that the hallway was wet due to being recently mopped."
The judge found Millet had forty percent contributory fault, however, because she was looking back into the room talking to her brother as she was walking into the hallway. The judge noted that if she had been looking ahead of herself, she probably would have noticed the wet floors and would have entered the hall floor more carefully.

ANALYSIS
Liability
Evangeline contends the trial court committed legal error when it determined that Millet sustained her burden of proof under La.R.S. 9:2800.6. Evangeline asserts there is "absolutely no evidence" that it either created the condition, had actual or constructive notice of the condition, or failed to exercise reasonable care. Evangeline argues there is nothing more it could have done to prevent the accident. Assuming that it was aware of a wet floor condition, Evangeline argues the trial testimony established there were "wet floor" signs in place. Alternatively, assuming there were no wet floor signs, Evangeline asserts there is no evidence that it knew or should have known a hazardous condition existed at the time Millet fell or that it was negligent.
First, we find no merit to Evangeline's argument about the lack or presence of "wet floor" signs. The trial court's findings regarding the presence and location of "wet floor" signs were based on credibility determinations, which may not be reversed in the absence of manifest error. We find no manifest error and, hence, we find no error in the court's determination that there were no wet floor signs in the area where plaintiff fell. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); see also, Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
We adopt the recent statement of the fourth circuit regarding hospital slip-and-fall liability:
[T]he burden of proof that LSA-R.S. 9:2800.6 establishes...should not have been used in this case where the accident occurred on a hospital's premises, instead of a merchant's premises.

*361 The proper burden of proof in a claim for injuries caused by a condition in a hospital is set forth in Neyrey v. Touro Infirmary, 94-0078 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214.
A plaintiff in a slip and fall case against a hospital must show the fall occurred and injury resulted from a foreign substance on the premises. The burden then shifts to the hospital to exculpate itself from the presumption of negligence. A hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity. [Citations omitted.]
Mosley v. Methodist Health System Foundation, Inc., 99-3116, pp. 3-4 (La.App. 4 Cir. 11/15/00), 776 So.2d 21, 23, writ denied, 01-597 (La.4/27/01), 791 So.2d 633. See also, LeBlanc v. Alton Ochsner Medical Foundation, 563 So.2d 312 (La.App. 5 Cir.1990).
Applying these principles to the facts here, we find no merit to Evangeline's argument in brief to this Court that there is no evidence that Evangeline either created the condition or had actual or constructive notice of the condition. The evidence is undisputed that the floor on which Millet slipped was wet and that the floor was wet because it had been mopped by Evangeline's employee. Accordingly, Evangeline cannot dispute knowledge of the dangerous condition.
Similarly, the evidence is unrefuted that the signs in place at the time Millet fell were not near the doorway of her brother's room, but instead were 20 to 25 feet away, near the nurses' station at the end of the hall. We find no error in the trial court's determination that the placement of the signs was a failure to exercise reasonable care to prevent the unreasonable risk of harm caused by the wet floor.
The unreasonable risk of harm criterion encompasses a myriad of considerations and can not be applied mechanically. Consequently, the trial court's factual findings and the ultimate determination of unreasonable risk of harm are subject to the manifest error standard. A reviewing court may not disturb a lower court's holding unless it finds that the trier of fact was clearly wrong. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. [Citations omitted.]
Shavers v. City of Baton Rouge/Parish of East Baton Rouge, 00-1682, pp. 2-3 (La. App. 1 Cir. 9/28/01), 807 So.2d 883, 884-885.
Accordingly, we affirm the trial court's finding of liability against Evangeline.
Damages
The next issue is whether the award of $100,000 for general damages was an abuse of the trial court's discretion.
Millet's kneecap was shattered. The patellar fracture required two surgeries. The first surgery was an open reduction and internal fixation of the left patella, using pins and wires to piece the various bone fragments together. Later Millet underwent a second surgery for removal of the pins and wires. The injury significantly curtailed Millet's social and physical activities. She wore a cast for several weeks, then wore a brace for three to three-and-a-half months.
Millet started a first round of physical therapy approximately four months after the accident, due to continuing problems with her knee. She ceased the physical *362 therapy after approximately one month in order to under go the second surgery. Approximately six weeks later she resumed physical therapy, but went to only three physical therapy visits during the second phase of physical therapy.
Millet was age 74 at the time of the accident and had been a physically active person. The injury to her left knee inhibited and curtailed her physical and social lifestyle: she was not able to go dancing as much as she had before the accident and she could not take the social walks with her husband as she frequently did before. She testified that before the accident she had enjoyed water-skiing and parasailing, but was no longer able to participate in those sports. She has difficulty getting up and down steps. The injury was very painful and, as of the date of the trial, she still experienced periodic pain and discomfort in her knee, particularly with changes in weather.
Walter Millet testified that his wife suffered emotional changes and was easily agitated during her recovery period. His wife was unable to perform her household duties and, for a certain period, unable to care for herself, requiring her husband to take over these duties and to care for her person.
Finally, Millet incurred medical expenses of $14,130.85 for her injuries.
In the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332, 334 (La.1976).
On appellate review, it is only after articulated analysis of the facts discloses an abuse of discretion that an award may be considered either excessive or insufficient. Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate [or excessive].
Theriot ex rel. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993).
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Applying these principles in this case, we are unable to find that the trier of fact abused his great discretion in the award of general damages.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellant, Evangeline Health Care, Inc.
AFFIRMED.
NOTES
[1] For ease of reference and because there is no, we refer only to the term "plaintiff" rather than "plaintiffs" is used