STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1617


EDDIE J. WILLIAMS, JR.

VERSUS

FINLEY, INC., D/B/A NAOMI HEIGHTS NURSING HOME


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 212,895
HONORABLE GEORGE C. METOYER, JR.,  DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

James A. Bolen, Jr.
Bolen, Parker, & Brenner, LTD
Post Office Box 11590
Alexandria, LA   71315-1590
(318) 445-8236
COUNSEL FOR DEFENDANT/APPELLANT:
    Finley, Inc.

Thomas B. Wahlder
Post Office Box 543
Alexandria, LA   71309
(318) 442-9417
COUNSEL FOR PLAINTIFF/APPELLEE:
    Eddie J. Williams, Jr.

AMY, Judge.

The plaintiff brought suit against the defendant nursing home, alleging that while he was visiting a patient, he slipped on a liquid substance on the floor and fell, sustaining multiple injuries. The trial court found in favor of the plaintiff, and the defendant now appeals the trial court's finding of liability, assessment of fault and the amount of general damages. For the following reasons, we affirm.

**Factual and Procedural Background**

This case arises from an accident which occurred on May 5, 2002 at a nursing home which was operated by the defendant, Finley, Inc., d/b/a Naomi Heights Nursing Home ("Naomi Heights"). The plaintiff, Eddie Williams, Jr., had just spent approximately an hour visiting with his brother, who resided at Naomi Heights. Mr. Williams testified at trial that he left his brother's room to return home at approximately 6:00 p.m. He stated that he spoke with an employee, Anna Stinson, as he walked down a hallway and slipped as he went to turn a corner. Mr. Williams alleges that he slipped in a puddle of water or some other liquid on the floor, and that he fell with sufficient force to cause him to lose consciousness. Mr. Williams testified that he was taken to the hospital by ambulance, and that he received treatment for the numerous injuries he sustained for months after the fall.

On April 24, 2003, the plaintiff filed this suit, stipulating in his Petition that the amount of damages claimed were less than fifty thousand dollars. At the subsequent bench trial, the parties stipulated to the date, time and location of the plaintiff's fall. In addition to his own testimony, the plaintiff presented the testimony of Ms. Stinson, who was employed as a certified nurse's assistant by Naomi Heights at the time of the accident. She stated that she had just attended to a patient's call and saw the plaintiff in the hall as she left the patient's room. Ms. Stinson said that she saw the plaintiff's

feet fly in the air and his head hit the wall two or three times as he fell. Although Ms. Stinson stated that she had not seen any substance on the floor when she had entered the patient's room to answer the call, she also stated that there was definitely a liquid on the floor which had caused Mr. Williams to slip. Ms. Stinston also testified that Mr. Williams' pants were wet after the fall.

The defense presented the testimony of Cherry Antoine, who worked on the housekeeping staff at Naomi Heights at the time of the accident. Ms. Antoine testified that she was responsible for cleaning the hall in which the plaintiff's fall occurred on the date of the accident. She stated that she checked to ensure that there were no liquids present on the floor before she left at three o'clock that afternoon. Ms. Antoine also testified that after the housekeeping staff leaves at three o'clock in the afternoon, it is the responsibility of the nurses and nurses' assistants to notice and clean any foreign substances on the floor. The defense also presented the testimony of Retha Carter, who was employed as a licensed practical nurse by Naomi Heights on the date of the accident. She stated that she noticed droplets of water on the ground where the plaintiff had fallen.

Following the conclusion of the testimony and the submission of the evidence, the trial judge found in favor of the plaintiff, awarding $45,000.00 in general damages and $9,305.88 in medical damages, in addition to legal interest and court costs. However, due to the plaintiff's stipulation, the judgment reflected total damages in the amount of $50,000 plus legal interest. The defendant filed a motion for suspensive appeal on September 14, 2004, and now asserts the following as error:

> 1. The trial court committed manifest error in finding fault on the defendant, Finley, Inc. d/b/a Naomi Heights Nursing Home for the slip and fall which occurred on May 5, 2002 at Naomi Heights Nursing Home.

2. The trial court committed manifest error in failing to apportion fault on the plaintiff for the slip and fall which occurred on May 5, 2002 at Naomi Heights Nursing Home.

3. The trial court committed manifest error in awarding the amount of general damages to Eddie J. Williams, Jr.

## Discussion

*Liability*

For his first assignment of error, the defendant alleges that the trial court erred in finding Naomi Heights at fault for the plaintiff's damages. The defendant alleges in its trial brief that the policy that Naomi Heights had in place regarding housekeeping was reasonable.

A trial court's findings of fact may not be disturbed absent manifest error. *Stobart v. State, through Dept. Of Trans. & Dev.*, 617 So.2d 880 (La.1993). When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. *Id.* The appellate court may not reverse if the trial court's findings are reasonable in light of the entire record. *Id.*

In its oral reasons, the trial court stated the following:

The court finds that there was, in fact, an accident, a slip and fall, at the Naomi Heights Nursing Home. Further, the court finds that the testimony reveals that there was in fact a foreign substance on the floor when, in fact, plaintiff fell. Defendants admit to not having any specific housekeeping personnel but that duty was charged to all staff members on duty at the time of the accident. Further testimony reveals there was no policy or procedure or records set into place for any one individual or group of individuals to check in the hallways, especially in light of the fact that patients would still be moving and milling around, visitors would be coming in and out. And then at that point, it would seem to this court that at least one staff member would be charged with the duty of checking the hallways, especially in light of the fact that visiting hours are set by the nursing home and the conditions under which those hours and those visitors exercise those hours are set by the nursing home.

3

The fact that you have non-nursing home personnel present does, in fact, create an additional risk. With that, this court finds that the defendants did, in fact, breach a reasonable standard of care commensurate with the particular circumstances. The court further finds that the defendants acted unreasonably in discovering and/or correcting a dangerous condition reasonably anticipated in its business activities.

In Louisiana, "[a] hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances." *Harkins v. Natchitoches Parish Hosp.*, 97-83, p. 4 (La.App. 3 Cir. 5/7/97), 696 So.2d 19, 21. The second circuit has held a nursing home's duty to its patients and their visitors to be similar to the standard of care that a hospital owes to its patients and visitors. *Robinson v. Gulf Ins. Co.*, 434 So.2d 487 (La.App. 2 Cir.), *writ denied*, 439 So.2d 1075 (La.1983).

In *Millet v. Evangeline Health Care, Inc.*, 02-1020 (La.App. 5 Cir. 1/28/03), 839 So.2d 357, the fifth circuit considered a claim by a nursing home visitor who had sustained injuries after slipping on a recently mopped floor. The *Millet* court applied the same burden of proof that had been applied in a slip-and-fall case against a hospital, stating as follows:

> [T]he burden of proof that LSA-R.S. 9:2800.6 establishes . . . should not have been used in this case where the accident occurred on a hospital's premises, instead of a merchant's premises.
>
> The proper burden of proof in a claim for injuries caused by a condition in a hospital is set forth in *Neyrey v. Touro Infirmary*, 94-0078 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214.
>
> A plaintiff in a slip and fall case against a hospital must show the fall occurred and injury resulted from a foreign substance on the premises. The burden then shifts to the hospital to exculpate itself from the presumption of negligence. A hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity. [Citations omitted].

4

*Millet,* 839 So.2d at 360-61 (quoting *Mosely v. Methodist Health Sys. Found., Inc.*, 99-3116, pp. 3-4 (La.App. 4 Cir. 11/15/00), 776 So.2d 21, 23, *writ denied*, 01-597 (La. 4/27/01), 791 So.2d 633). Similarly, in this case, Naomi Heights does not meet the definition of a "merchant" as defined in La.R.S. 9:2800.6, which establishes the burden of proof in claims against merchants.[1]

The parties stipulated that the fall occurred, and Mr. Williams presented evidence that there was liquid present on the floor. Mr. Williams, Ms. Stinson, and Ms. Carter each testified that they saw a liquid on the floor after his fall. Also, the incident report taken by Ms. Carter after the incident states that the cause of the incident was "Wet or Foreign Matter on [the] Floor[.]" (Emphasis in original.) Consequently, we must consider whether Naomi Heights acted with reasonable care under the circumstances.

The main issue presented by the parties and considered by the trial court centered on Naomi Heights' housekeeping policy. Ms. Stinson, Ms. Antoine, Ms. Carter, and Donna Haas, the assistant director of nurses at Naomi Heights at the time of the accident, each testified that Naomi Heights' policy was that housekeeping staff was on hand from morning until approximately three o'clock in the afternoon to do general cleaning and to respond to spills. However, after the housekeeping staff left in the afternoon, it was the responsibility of the nurses and nurses' assistants to clean up spills or other foreign substances on the floor as they noticed them. Ms. Stinson testified that, as the patients walked through the hallways, it was not uncommon for

---

[1] Louisiana Revised Statutes 9:2800.6(C)(2) states:

"Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

them to spill or otherwise leave substances on the hallway floors. At the time of the accident, Naomi Heights did not record a log or other documentation to indicate how regularly the halls were checked for spills or other foreign substances. Our review of the record further indicates that Naomi Heights allowed visitors until 9:00 p.m.

The trial judge heard the evidence and determined that, under the circumstances of this case, Naomi Heights had breached its standard of reasonable care. Given the evidence presented in the instant case, this finding has a reasonable basis. The trial court noted that Naomi Heights employed no housekeeping personnel after 3:00 p.m., even though residents clearly still walked the hallways after that time, and visiting hours extended six hours later until 9:00 p.m. Based on the circumstances of the present case, the trial court did not commit manifest error in finding that the defendant acted unreasonably in failing to discover and correct the dangerous condition that caused the plaintiff's fall. This assignment has no merit.

*Apportionment of Fault*

For its second assignment of error, the defendant asserts that the trial court erred in failing to assess a portion of fault for the accident to the plaintiff. The defendant alleges that the plaintiff "readily admitted that he was not acting as a reasonably prudent person at the time and paying attention to where he was walking."

In describing the events that led to his fall, the plaintiff testified as follows:

A. Well, I was on my way out, walking down the hall there and Anna happened to ask me how was he doing? and [sic] I said, "He's not doing too good right now because the lady say [sic] he's not eating."

Q. Is that Anna Stinson?

A. Right.

Q. Okay.

6

A.  And I say, "Since he had this fall, he's not doing too good."

Q.  You're talking about your brother.

A.  Right.

Q.  Alright. Then what happened after you talked to Anna?

A.  So, you know, we was steady talking and I wasn't paying [sic] where I was going so when I went to go around the corner I slipped. My foot went up in the air and when I come down, I came down on my shoulder and my head.

In *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court discussed the factors which should be considered in assessing the conduct of the parties and allocating fault, stating:

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including:  (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.  And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

Applying these principles to the instant case, we find no clear error in the trial court's assessment of fault completely to the defendant.  There was no evidence presented that would indicate that Mr. Williams was required to see or appreciate the substance.  Thus, the trial court was free to find that the plaintiff's conduct in walking through the hall was not unreasonable.  Accordingly, the trial court did not err in failing to assess some percentage of fault to the plaintiff, and this assignment of error is without merit.

*General Damage Award*

For his final assignment of error, the defendant asserts that the trial court erred in awarding $45,000.00 in general damages to Mr. Williams. The trial court additionally awarded the plaintiff $9,305.88 for special damages, although the total figure was reduced to $50,000.00 in accordance with the plaintiff's stipulation. The defendant argues that the testimony and medical records do not support the general damage award, because "Mr. Williams had two visits to the hospital in May 2002, which he relates to the accident. After a two-month gap in treatment, Mr. Williams returned for four months of additional treatment, which he claims is related to the May 5, 2002 accident. For this treatment, the Trial Court awarded in excess of $40,000.00 in general damages."

The Louisiana Supreme Court articulated the proper standard for reviewing a trial court's award of general damages in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993). The *Youn* court stated:

> [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Id.* at 1261.

The testimony of Ms. Stinson and the plaintiff demonstrates that, upon slipping on the wet substance, his feet flew up into the air, he hit his head on the wall and concrete floor two or three times, and then he landed on his back. Both also testified that the fall rendered him unconscious. He reported to the nursing home that he had pain in his head, neck and lower back, and the incident report completed by

Ms. Carter states that he complained of dizziness, weakness, pain in his arms and radiating down his back, and unsteadiness on his feet. The plaintiff also told Ms. Haas and Ms. Carter that he had previously had a neck surgery; that information was also recorded in the incident report.

The plaintiff was taken by ambulance to the emergency room of Christus St. Francis Cabrini Hospital. He was discharged that evening and instructed to follow up with his physician. According to the plaintiff, he was unable to move and remained in bed throughout the week following the fall. Mr. Williams testified that he visited with Dr. Verma in Pineville sometime later in April and received a prescription for pain pills. The defendant also visited the emergency room of Rapides General Hospital on May 10, 2002, complaining of headache, back pain, and that his legs and hands were "giving out." The plaintiff testified that he continued to experience pain after that visit, and that he began using a cane to walk with because he had problems balancing.

The plaintiff did not seek other treatment until August 12, 2002, when he visited Dr. Leglue and complained of similar pains. Dr. Leglue diagnosed the plaintiff with cervical myofacial pain syndrome, lumbar myofascial pain syndrome, and bilateral piriformis syndrome. Dr. Leglue also prescribed pain medication and medication to help the plaintiff sleep, as well as physical therapy, which the plaintiff attended three times weekly for four weeks. Dr. Leglue referred the plaintiff to Dr. Beurlot, who diagnosed the plaintiff with carpal tunnel syndrome and recommended surgical intervention.

The plaintiff's last appointment with Dr. Leglue was on January 7, 2003, and he testified that he did not return because he was unable to afford any more visits due

9

to his fixed income. He testified that he continues to use a cane to walk, although he stated on cross-examination that he began using the cane on his own accord and that no doctor has ever prescribed that he use it. He stated that, although he was in poor health prior to the fall, he has significantly more trouble getting around since the fall and is unable to play domino games with his friends. He testified that his decreased mobility and pain have negatively affected his mood, and that he is unable to engage in intimate relations with his wife.

Our review of the record indicates that the plaintiff continued to seek treatment for his injuries for approximately eight months after the accident, and that he stated that he continued to experience physical discomfort and significant alterations to his lifestyle due to the injuries he sustained. Although the plaintiff testified that he suffered from multiple physical maladies prior to the accident, he also stated that he had been able to go walking and visit with friends, activities which he stated he could no longer participate in. Based upon the plaintiff's testimony and the medical evidence adduced at trial, the trial judge did not abuse his discretion in awarding Mr. Williams general damages of $45,000.00. This assignment lacks merit.

## DECREE

For the foregoing reasons, the ruling of the trial court is affirmed. All costs of this proceeding are assigned to the defendant, Finley, Inc., d/b/a Naomi Heights Nursing Home.

**AFFIRMED**.