jaCRAIN, Judge.
Maryal Parfait was allegedly injured when, as a visitor in the defendant’s emergency room, she stepped on a piece of glass with her bare foot and also struck her knee. She sued the defendant for damages and her action was dismissed by the district court. This appeal followed.
On appeal, plaintiffs contend the trial court erred in its finding on the issue of liability and its assessment of costs. We affirm the judgment of the district court.
On the evening of April 25, 1990, plaintiff, Maryal Parfait, received a telephone call from her friend, Audrey Langston. Ms. Langston reported she was experiencing chest pains. Ms. Parfait drove to Ms. Lang-ston’s house where she retrieved her friend and took her to the defendant hospital. Upon their arrival, at approximately 11:00 p.m., Ms. Langston registered for admission in the emergency room and returned to be seated by the plaintiff. In approximately two minutes, Ms. Langston was taken, by stretcher, into the emergency room. She was placed in Room No. 8 located in a corner area of the emergency room. Following a twenty minute wait plaintiff asked to enter the area where Ms. Langston was being held. She was escorted to a chair in the area of Ms. Langston’s bed. After about 2 hours, Ms. Parfait decided to stretch her feet. She removed her shoes, placed her foot on the floor and felt a sharp object enter the heel of one foot. In response she allegedly jerked her knee and struck it on the adjacent bed.
A nurse was summoned and she called Dr. Donald Thibodeaux to examine Ms. Parfait’s foot. With the use of an eighteen gauge needle, Dr. Thibodeaux removed a sliver of glass (approximately 3-5 mm. in size) from the heel of Ms. Parfait’s foot. An interview with hospital security officer, Timothy Le-compte, followed. Ms. Parfait and Ms. Lang-ston left the hospital at approximately 2:30 a.m. the following morning.
On the drive home, Ms. Langston saw what she described as plaintiffs “swollen knee” and she remembered complaints made about this by Ms. Parfait.
IsThe next day plaintiff returned to the emergency room for treatment. Her knee area was x-rayed and bandaged. Thereafter, Ms. Parfait was treated by an orthopedic surgeon, Dr. Pete Rhymes. She underwent an orthoscopic procedure on October 30, 1990. She was found to have significant chondromalacia of the right knee.
Ms. Parfait filed this suit for damages for personal injuries on March 27, 1991. She was joined by her husband, who seeks damages for loss of consortium.
On January 29, 1993, judgment was rendered in favor of the defendant and against plaintiffs dismissing their suit.

Liability

On appeal plaintiffs contend that they met their burden of proving by a preponderance of the evidence that it was more likely than not that the piece of glass, in the area of Bed No. 8 in the defendant’s emergency room, was present prior to Ms. Parfait’s arrival. Additionally, plaintiffs argue that the defendant failed to exculpate itself from liability when the burden of proof shifted to it. In particular, plaintiffs allege that proof of a general policy of inspection and clean-up does not satisfy the criteria of reasonable inspection and clean-up on the night of this incident.
In its reasons for judgment, the trial court found that the defendant exercised reasonable care for the safety of visitors, under the circumstance of this case. The court also found that plaintiffs failed to prove by a preponderance of the evidence that the piece of glass was in the Bed No. 8 emergency area prior to Ms. Langston being positioned in that area. Consequently, the court found that the defendant did not have actual or constructive knowledge of the hazardous con *1142 dition, (i.e.), the piece of glass. The court also found that Ms. Parfait did not exercise reasonable care and did not act as a reasonable, prudent person by removing her shoes in the emergency room. Finally, the court found these actions caused Ms. Parfait’s injuries.
There is little dispute over the facts surrounding the incident in question. The question before this court concerns the sufficiency of that evidence to prove liability.
pin Bordelon v. Southern Louisiana Health Care Corp., 467 So.2d 167, 169 (La.App. 3rd Cir.1985), unit denied, 469 So.2d 989 the court discussed the standard to be applied when one is injured on a hospital’s premises:
In slip and fall cases a prima facie case is established when the plaintiff shows that he slipped, fell and was hurt because of a dangerous condition on the premises. Miller v. Smith, 391 So.2d 1263 (La.App. 1st Cir.1980), affirmed, 402 So.2d 688 (La. 1981). A premise hazard is a condition or operation of the premises that results in an unreasonable risk of harm to customers under the circumstances. Watson v. West Brothers ofVille Platte, Inc., 399 So.2d 771 (La.App. 3rd Cir.1981). The duty owed by the hospital to visitors is that of exercising reasonable care for their safety commensurate with the particular circumstances involved. Perkins v. Springhill General Hospital, 278 So.2d 9Ó0 (La.App. 2nd Cir. 1973); Ryle v. Baton Rouge General Hospital, 376 So.2d 1024 (La.App. 1st Cir. 1979).
Historically, the elevated standard of care applied to merchants by Kavlich v. Kramer, 315 So.2d 282 (La.1975) has not been applied to the hospital setting. Le-Blanc v. Alton Ochsner Medical Foundation, 568 So.2d 312 (La.App. 5th Cir.1990); Robinson v. Gulf Ins. Co., 434 So.2d 487 (La.App. 2nd Cir.1983) unit denied, 439 So.2d 1075. The standard applied to hospitals has always been similar to that which is now applicable to merchants under La.R.S. 9:2800.6. Consequently, when there is a condition on the premises which causes an unreasonable risk of harm and is reasonably foreseeable, it must still be shown that the hospital created the condition, had actual or constructive notice of the condition, and failed to exercise reasonable care.
In this case, Ms. Parfait was allegedly injured when she stepped on a “foreign substance or object”, a sliver of glass, on the floor of the defendant’s emergency room. We find that plaintiffs have failed to satisfy their burden of proving liability on the part of defendant in this case.
First, our review of the record indicates that plaintiffs have not proven the existence of the foreign substance, on the premises, prior to Ms. Parfait’s entrance into that area.
The plaintiff, Maryal Parfait, testified that she was in the | ¡jarea of Bed No. 8 in the emergency room for approximately two hours prior to this incident. During that time, there was no glass broken. She did not carry any broken glass bottle with her. Plaintiff could not state whether she or Ms. Langston brought the glass particle in on the bottom of their shoes.
Audrey Langston, plaintiff’s friend, who was present in the emergency room on the night of this incident, testified that she did not know where the glass came from which penetrated Ms. Parfait’s foot. She further stated that she had no reason to look at the floor just before, nor after, this accident. She only saw the glass following its removal from Ms. Parfait’s foot.
Moreover, the clean-up procedures employed by the defendant would further indicate that it was more probable than not that this “foreign object” was not present in this area prior to Ms. Parfait’s arrival.
Dr. Donald Thibodeaux who removed the glass from Ms. Parfait’s foot with an 18 gauge needle, testified that the glass particle was 3 to 5 millimeters in size. He also testified that the bed areas of the emergency room are cleaned prior to placing patients in the area.
This testimony was elaborated upon by Jana Daigle, the critical care nurse in charge of the defendant’s emergency room. Ms. Daigle testified that there is a strict policy for the disposal of “sharps” (i.e., item which come into contact with body fluids). These items are placed in a separate container on *1143 the wall, located behind the head of each bed. The disposal of “sharps!’ or contaminated objects is consistent with the training of nurses.
Ms. Daigle also testified that the cleaning policy in the emergency room calls for each nurse to clean the area, change the bed and remove paraphernalia before the care of each patient. The floors are also cleaned of de-. bris. Additionally, the housekeeping department cleans the floors every 24 hours. As head of this department, Ms. Daigle is responsible for making sure the floors are clean.
I ^Moreover, there exists a cheek list which is used each morning, during the approximately three hour period, that housekeeping is in the emergency department. The form utilized indicates the existence of daily dust mopping, damp mopping and trash collection. These activities were conducted prior to plaintiff’s arrival in this area of the hospital and were in addition to the procedures conducted by the nurses prior to a patient’s arrival into each bed area of the emergency room.
Additionally, Ms. Daigle testified that the emergency room personnel are instructed to and do keep a constant “look-out” for foreign objects. When a foreign object is seen, it is picked up and placed in a disposal. “Sharps” are placed in a receptacle for such items. If a spill occurs, housekeeping is summoned if the spill is too large for the nurse to handle. According to Ms. Daigle, the area in question had been the subject of a housekeeping inspection on the day of this incident. This was in addition to the nurses cleaning procedures.
This testimony was corroborated by Emily Fuchs, the nurse present in the emergency room and attending plaintiff following this incident.
Timothy Leeompte, a security guard in charge of this area of the hospital also corroborated the testimony concerning the hospital’s cleaning procedures. Mr. Leeompte further testified that in addition to the “lookout” by other emergency room personnel, he also has a responsibility to conduct periodic inspections of the area. He stated that peo-pie who are barefoot, when coming to the emergency room, are placed on a stretcher or in a wheel chair.
Under these circumstances we find, as did the trial court judge, that plaintiff has failed to bear her burden of proving that she was injured as a result of a foreign object on defendant’s premises created by defendant.
Secondly, assuming for the sake of argument that Ms. Parfait proved the existence of the glass in the area before her arrival, she has nonetheless failed to prove an essential requirement for a |7case of this nature. That is, she has failed to prove that her injuries were, caused by “premise hazard”. A premise hazard must create an unreasonable risk of harm to the claimant that was reasonably foreseeable. See: Bordelon, 467 So.2d at Í69; c.f. La.R.S. 9:2800.6 B(l).
The record indicates that the glass particle in question was approximately 3 to 5 millimeters in size. It was allegedly found in a restricted area of the hospital’s busy emergency room where people are not allowed to walk barefoot. Under these circumstances if the sliver of glass was present prior to Ms. Parfait’s arrival, it would not have constituted an “unreasonable risk of harm” that was reasonably foreseeable since the defendant did not anticipate persons walking barefoot in the emergency room, and had no way of knowing that plaintiff would remove her shoes.
We agree with the trial judge that plaintiffs failed to carry their burden of proof.

Damages, Expert Fees, and Costs

Due to the conclusion reached by this Court on the issue of liability, we do not reach the issue of damages. We do, however, address plaintiffs’ allegations regarding the assessment of expert fees and costs.
Plaintiffs contend that the trial court erred in awarding expert fees to Dr. Donald Thibodeaux, because he was only a fact witness. We find from our review of the record that Dr. Thibodeaux was more than a mere fact witness. His testimony contained evidence of his treatment of Ms. Parfait’s injuries, his recommendations for her future *1144 care, as well as his expert opinion regarding this plaintiffs knee injuries. The trial court correctly awarded expert fees to Dr. Thibo-deaux.
Finally, plaintiffs contend that the trial court erred in assessing them with all of the costs of this proceeding. They allege that costs should have been shared by the respective parties to this litigation.
As a general rule “costs shall be paid by the party cast”. La.C.C.P. Art. 1920. The trial court’s assessment of costs can be | reversed on appeal, only upon a showing of an abuse of discretion. State ex reí. Guste v. Nicholls College Foundation, 592 So.2d 419 (La.App. 1st Cir.1991), writ denied, 593 So.2d 651 (1992).
Plaintiffs have cited no reason why they should not be cast for all of the costs of the trial court proceeding, nor do we know of any such reason. The trial judge did not err in assessing plaintiffs with all costs.
For the reasons assigned, the judgment of the trial court is affirmed at plaintiffs’ costs.
AFFIRMED.