690 So.2d 958 (1997)
Nellie HOLDEN and Lamar Holden, Plaintiff-Appellee,
v.
LOUISIANA STATE UNIVERSITY MEDICAL CENTERSHREVEPORT, Defendant-Appellant.
No. 29268-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1997.
Writ Denied May 1, 1997.
*959 Frances E. Jones, Assistant Attorney General, for Appellant.
William C. Monroe, Shreveport, for Appellee.
Before HIGHTOWER, WILLIAMS and CARAWAY, JJ.
CARAWAY, Judge.
The defendant, the State of Louisiana through Louisiana State University Medical Center-Shreveport ("LSUMC"), appeals a judgment from the trial court in favor of the plaintiffs, Nellie and Lamar Holden, husband and wife, for damages arising out of injuries sustained by Nellie Holden when she slipped and fell on the premises of LSUMC, and the loss of consortium suffered by Lamar as a result of Nellie's injuries. For the reasons expressed herein, we reverse the judgment of the trial court and render judgment in favor of the defendant.

*960 Facts and Procedural History

On October 28, 1991, at approximately 6:00 p.m., Nellie Holden and her husband, Lamar, were at LSUMC in Shreveport visiting their daughter, who had been admitted for treatment and assigned a room on the ninth floor of the hospital. The couple had just stepped off of the elevator on the ninth floor when 57 year-old Nellie slipped and fell just a few feet from the elevator in the corridor between two sets of elevators.
After the fall, Mr. Holden obtained assistance for his wife from personnel at the medical center. Mrs. Holden was picked up from the floor and placed in a wheel chair by staff members at LSUMC. She was taken to the emergency room of the hospital where she was treated for a fractured left patella (knee cap) which required a four-day hospital stay. She later underwent corrective surgery due to discomfort in her knee.
Plaintiffs contend that Mrs. Holden slipped on a foreign substance on the floor. Dinner had been served to the patients on the ninth floor between 5:00 and 5:30 p.m. Mrs. Holden testified that after she fell, she notice a clear liquid that looked like water or juice. She felt and touched the silky substance that smelled like peach or pear juice. Mr. Holden testified that after Mrs. Holden fell, he sought help from staff at the hospital and told them of the substance on the floor. He said a nurse put her hand in the substance and called for a towel. When she got the towel she wiped up the substance. He did not know the name of the nurse, nor could he identify her.
Following the presentation of the testimony of Mr. and Mrs. Holden at trial and certain medical testimony presented by medical records and depositions, the plaintiffs rested their case without any evidence regarding the LSUMC cleanup and maintenance procedures for the building and, in particular, the area of the ninth floor in question. At the conclusion of plaintiffs' case, defendant's motion for involuntary dismissal based upon this lack of evidence was denied.
LSUMC then presented in defense the testimony of a nurse who said Mr. Holden told her of the slip and fall and substance on the floor. She obtained a towel and went to the scene where Mrs. Holden lay to wipe up the substance. She testified that she could not find any foreign liquid on the floor. LSUMC presented no testimony regarding its procedure for maintaining and cleaning of the ninth floor area in question.
The trial court concluded that the nurse who testified for the defendant was not the same nurse who wiped up the spillage. Impressed with the certainty and specificity with which the plaintiffs presented their story of the incident, the court made the factual finding that there was a water or juice-like substance on the floor that caused Mrs. Holden to slip and fall. Regarding the spill, the trial court also ruled that the "origin of the substance was not proven."
Once the trial court reached these factual conclusions, it applied LSA-R.S. 9:2800[1] and Civil Code article 2317 for the determination of liability. The court concluded that the defendant had custody and control of the floorway and that the floor was defective or unreasonably dangerous as a result of the spillage of the foreign substance. The court *961 then found that a presumption of negligence arose in favor of the plaintiff once Mrs. Holden had shown she slipped on a foreign substance on the floor. As a result of the presumption, the burden was shifted to the defendant to exculpate itself from the presumption, presumably by presenting evidence that it did not cause the spillage and that it exercised reasonable care in inspecting the premises. It further found that LSUMC had constructive notice of the defective condition of the premises because (1) of the presence of a substance on the floor, (2) dinner was served approximately 30 minutes before the accident, (3) the lack of procedures for inspecting the floor, particularly after serving dinner, and (4) the failure to inspect the floor during a reasonable time period before or after the accident. The latter two reasons for ruling against the defendant were the result of no evidence having been adduced at trial regarding floor inspections. The court concluded that the plaintiff had shown by a preponderance of the evidence that LSUMC was liable to the plaintiff for the accident and the injuries sustained as a result thereof.
The trial court did award Nellie $33,750 for general damages and $12,500 for her disability. The court awarded Mr. Holden $3270 for loss of consortium.
LSUMC appeals raising four assignments of error pertaining to the trial court's ruling regarding liability:
(1) The trial court erred in finding that the floor was defective and that it was unreasonably dangerous.
(2) The trial court erred in finding that the defendant had actual or constructive knowledge of the defect prior to the accident and failed to remedy it within a reasonable time.
(3) The trial court erred in shifting the burden of proof from plaintiffs to defendant when plaintiff's prima facie case had not been established.
(4) The trial court erred in not granting defendant's motion for involuntary dismissal under C.C.P. art. 1672.

Law Applicable to Slip and Fall Cases
In this slip and fall case, the trial court incorrectly concluded that LSA-R.S. 9:2800 and Civil Code article 2317 were applicable. This case does not involve a defect in the premises, but a defect on the premises. It is well-settled that the temporary presence of a foreign substance is not, in and of itself, a defect for purposes of strict liability under La.Civ.Code art. 2317. Mitchell v. Travelers Ins. Co., 464 So.2d 404 (La.App. 1st Cir. 1985); McKinnie v. Department of Transportation and Development, 426 So.2d 344 (La.App. 2d Cir.1983), writ denied 432 So.2d 266 (La.1983); Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied 429 So.2d 127, 429 So.2d 134 (La.1983); Brown v. Winn-Dixie Louisiana, Inc., 417 So.2d 44 (La.App. 1st Cir.1982), rev'd on other grounds, 452 So.2d 685 (La.1984). The reasoning behind this rule is that the presence of the foreign substance does not create a vice or a defect inherent in the thing itself. As such, the presence of a liquid on the floor such as peach or pear juice does not render the premises defective, and Article 2317 is inapplicable. For the same reasons, the limitations on strict liability found in LSA-R.S. 9:2800 are not applicable. Simmons v. City of Monroe, 588 So.2d 1357, 1360 (La.App.2d Cir.1991).
As a corollary principle in light of the inapplicability of strict liability under Article 2317, the presence of a liquid on a floorway open to the public does not automatically create liability upon mere proof of the accident. The owner of the premises does not insure the visitor's or patron's safety for every accident. Jefferson v. Costanza, 628 So.2d 1158 (La.App.2d Cir.1993). The presence of other members of the public passing through the building raises a significant possibility that a spill was caused by the negligence of a third person.
Thus, this case is one of negligence under LSA-C.C. art. 2315. Simmons, supra; Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App.2d Cir.1988), writ denied, 524 So.2d 520 (La.1988). Under the negligence standard, a hospital owes a duty to its visitors to exercise reasonable care to *962 keep the premises in a safe condition commensurate with the particular circumstances involved; but the duty owed is less than that owed by a merchant. Reynolds v. St. Francis Medical Center, 597 So.2d 1121 (La. App.2d Cir.1992). Morrison v. Baton Rouge General Medical Center, 93 1055 (La.App. 1st Cir. 4/8/94), 635 So.2d 768. The trial court must consider the relationship between the risk of a fall and the reasonableness of the measures taken by the defendant to eliminate the risk. DeGruy v. Orleans Parish School Board, 573 So.2d 1188 (La.App. 4th Cir.1991).
The issue of the burden of proof in a slip and fall case has been addressed judicially and legislatively with differing views since the 1975 decision in Kavlich v. Kramer, 315 So.2d 282 (La.1975). Though this history since 1975 concerned slip and fall accidents in the storekeeper or merchant setting and resulted ultimately in the 1988 enactment of LSA-R.S. 9:2800.6, which is the slip and fall statute governing merchants, a review of that history is instructive in addressing the burden of proof issue in this non-merchant setting.
Beginning with Kavlich, as further explained in Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976), the Supreme Court required the defendant storekeeper to exculpate itself from a presumption of negligence imposed merely by the plaintiff's showing that the fall occurred because of a foreign substance on the floor. Prior to that time, the general rule had been that the plaintiff must prove, in addition to the fall, that the dangerous condition (1) was created by the merchant's employees or (2) either (a) was actually known to the merchant's employees or (b) had existed for a sufficient length of time for the merchant to have constructive knowledge. Broussard v. National Food Stores of La., Inc., 233 So.2d 599 (La.App. 3d Cir.1970).
In Gonzales, the plaintiff apparently had introduced evidence pertaining only to her fall which was caused by a spill from a broken bottle of olive oil. The defendant offered only the testimony of its store manager who came on duty after the accident had occurred, and who testified regarding the general inspection procedures of the store. Without defense testimony from the actual employees on duty prior to the accident regarding their specific actions and inspections, the Supreme Court found that the defendant failed to meet its burden of proof established by Kavlich to exculpate itself from the presumption of negligence.
In Gonzales, when the case had been considered at the court of appeal, Judge (now Justice) Lemmon, in his dissent, succinctly discussed the competing inferences involved in a slip and fall case, where, as in this instance, it is unknown who caused the spill and when it happened. He stated:
On the crucial determination as to whether or not this negligence caused the injury, competing inferences arise according to the circumstances of each case.
If the evidence in a particular case shows the storekeeper inspected the aisles thoroughly and regularly at reasonable intervals, there is a reasonable inference that most hazards will be discovered and that the hazard in question was created so near to the moment of the accident that the storekeeper, though duly diligent, was unaware of it. On the other hand, if the evidence shows the storekeeper never inspected the aisles and a substantial risk of injury is implicit in the manner in which the business is conducted, most hazards will remain undiscovered, and it is more likely than not that this violation of duty was a substantial factor in causing the accident. Although such evidence admittedly does not exclude all other possibilities, the degree of probability preponderates in favor of this conclusion.
Stated otherwise, there is a high degree of probability that spills will be discovered if adequate inspections are conducted. This is the very purpose of imposing the duty to inspect.
I would hold that when a plaintiff has proved the storekeeper failed to perform inspections commensurate with the risks involved in his business operations, the overall circumstances may justify a conclusion by the trier of fact that an accident resulting from a hazard on the floors was *963 caused, at least in part, by the storekeeper's permitting the hazard to arise and to continue.
Gonzales v. Winn-Dixie Louisiana, Inc., 309 So.2d 697, 704-705 (La.App. 4th Cir.1975).
Additionally, Justice Lemmon, writing immediately before rendition of the Kavlich decision, discussed the issue of the burden of proof and the doctrine of res ipsa loquitur:
The majority opinion rejects the argument that if res ipsa loquitur is applied, a plaintiff need only prove the slip and fall on an extraneous substance (without contributory negligence) before resting the case.
I also reject such a view which is a misleading oversimplification. Proof of a slip and fall without contributory negligence only raises an inference that someone (an employee or third person) was negligent in creating a hazard. It is the proof of lack of inspection which raises the inference that the storekeeper was negligent in failing to discover and correct the hazard within a reasonable time.

* * * * * *
The burden of proof in slip and fall cases is always on the plaintiff. The burden does not shift, nor is the burden subject to the requirement that the defendant first show anything. Nevertheless, a plaintiff can meet this burden with sufficient circumstantial evidence.
Id. at p. 705, including Footnote 1. (Emphasis supplied).
Following the Kavlich and Gonzales rulings, the burden on the merchant to exculpate itself from the presumption of negligence was further heightened to include, in addition to evidence of adequate safety and cleanup procedures, proof that none of the merchant's employees caused the spill at issue. McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987). In response to this line of jurisprudence placing the burden of proof on the defendant, the legislature enacted in 1988, and later amended in 1990, a special slip and fall statute, LSA-R.S. 9:2800.6, which is specifically applicable only to merchants. (See Footnote 1, supra.)
The Supreme Court addressed the new statute for the first time after its amendment in 1990, in Welch v. Winn-Dixie Louisiana, Inc., 655 So.2d 309, 314 (La.1995). It observed:
In 1990, the Legislature changed direction completely and enacted the current version of the statute which, according to one commentator, copies the "traditional" rule of liability requiring actual or constructive knowledge and places the burden of proof squarely on the plaintiff.
The court ruled in Welch that the burden of proof was on the plaintiff and that the plaintiff had met that burden with the evidence placed before the trier of fact regarding the defendant's inadequate inspection procedures.
While a slip and fall case in a non-merchant setting is also reviewed under the analysis for negligence discussed above, we have not found that the Louisiana Supreme Court applied the ever-increasing post-Kavlich burdens upon non-merchant defendants such as LSUMC between 1975 and 1990. The economic circumstances which prompted Kavlich, including the merchandising distractions and customer volume, are not present in a patient's wing of a hospital. Thus, despite dicta in certain appellate decisions where the evidence of the defendant's procedures for inspection of their premises was fully presented at trial and analyzed on appeal, a non-merchant such as LSUMC is not required to exculpate itself from a presumption of negligence raised simply by the plaintiff's showing of a fall from a foreign substance whose source is unknown. See, Reynolds v. St. Francis Medical Center, 597 So.2d 1121 (La.App.2d Cir.1992); and LeBlanc v. Alton Ochsner Medical Foundation, 563 So.2d 312 (La.App. 5th Cir.1990). See and compare, Webster v. Terrebonne Parish Council, 515 So.2d 461 (La.App. 1st Cir.1987) and DeGruy v. Orleans Parish School Board, supra.

Discussion
In every case discussed above, regardless upon whom the technical burden of proof was being placed at the time, there was some evidence before the courts regarding *964 the inspection procedures for the defendant's premises. In the absence of proof that the hazardous spill was caused by the defendant's own actions, the duty to keep the premises in a safe condition must be shown to have been breached by some proof of an inadequate inspection procedure. From our review of the slip and fall cases, the burden of producing such evidence is now clearly back on the plaintiff in the storekeeper/merchant context, and it was never removed from the plaintiff's burden in the non-merchant setting such as this case.
The trial court drew inferences from certain facts established at trial which we will test to determine if the plaintiff proved the defendant's negligence. First, the court emphasized that the presence of the substance on the floor indicated constructive notice sufficient to make LSUMC responsible. While this view was derived in part by the trial court's application of a strict liability analysis to this case, it also suggests a misreading of the inferences which can be drawn from this particular spill. Located between the two sets of elevators for the ninth floor, the spill, which was not shown to be large in size, was in a place where the visitors to the hospital regularly passed. From this location and size of the spill, there is no strong basis for discriminating in the choice between the two possible sources of the spill, the general public or the hospital employees. The fact that it was in the most publicly accessed area of the ninth floor tends to weigh more toward a spill by another visitor. As to the critical issue of the time interval in which the defendant could have acted between the spill and the accident, the location and size of the spill do not, standing alone, indicate a lack of diligence by the hospital personnel in discovering the spill.
The trial court next relied upon two facts which, taken together, indicated to him a lack of diligence by LSUMC. The liquid causing the accident was fruit juice, and the accident occurred immediately after dinner had been served to the hospital patients. First, these two facts do not serve to elevate greatly the possibility that the spill was caused by a hospital employee mishandling a food tray. No evidence was presented regarding the procedure for handling food trays, the route taken by hospital personnel between the kitchen and the ninth floor rooms in handling the food, or the food which was served on the evening in question. While the presence of food and liquids on the ninth floor within the hour before the accident indicated the possibility that either the hospital staff or the visitors to the floor mishandled the juice, the trial court concluded that the origin of the substance was not proven.
The inferences raised by these two factsthe juice spill and the dinner hour may have served to increase the scrutiny applied to LSUMC's actions for serving dinner and inspecting the premises thereafter. Nevertheless, in the absence of evidence as to those actions during the dinner hour, the critical inference which might be gained from those actions (or inactions) is missing. Only by evidence of those actions, can the critical inference be drawn that the accident was more likely caused by LSUMC's failure to carry out its duty than by the actions of another visitor passing by the elevators. Since we conclude that this was the plaintiff's burden of proof, we are left with a record where the circumstantial evidence does not strongly suggest that the defendant's negligence is the most plausible explanation for the accident. Since fault cannot be based upon strict liability, defendant's fault for a negligent breach of duty was not demonstrated in this instance by some evidence of the defendant's lack of reasonable inspection.

Conclusion
Therefore, for the foregoing reasons, we reverse the judgment of the trial court and render judgment for the defendant, LSUMC, dismissing the claims of the plaintiffs.
REVERSED.
WILLIAMS, J., concurs.
NOTES
[1] § 2800. Limitation of liability for public bodies

A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.