CARTER, C.J.
 

 li>This is a slip-and-fall personal injury case. Defendant appeals a judgment that awarded plaintiff damages after finding an “unreasonable condition” existed on the floor of defendant’s premises that caused plaintiff to slip and fall. For the following reasons, we reverse.
 

 BACKGROUND
 

 At approximately 3:00 p.m. on August 14, 2007, Marion Terrance stopped at the Baton Rouge General Medical Center (hereafter referred to as “the hospital”) cafeteria for a cup of ice before visiting her mother who had been a patient at the hospital for approximately two weeks. As Ms. Terrance turned away from the ice machine and stepped off of the heavy black mat in front of the ice machine, she slipped and allegedly fell, injuring her lower back and groin area. Ms. Terrance informed the hospital employees working at the cafeteria’s sandwich counter that the black mat was saturated with water, that the ice machine was leaking, and that she had slipped and fallen. Ms. Terrance immediately proceeded to leave the cafeteria in order to visit her mother, but she returned to the cafeteria approximately ten-to-twenty minutes later so that she could speak to a supervisor about reporting her injury.
 

 The hospital cafeteria supervisor, Margie Akins, did not see Ms. Terrance fall; however, the sandwich counter employees informed Ms. Akins of the incident immediately after Ms. Terrance left the cafeteria to visit her mother. The employees told Ms. Akins that Ms. Terrance slipped, but did not fall. Ms. Akins instantly checked the floor area around the ice machine, as well as under the black mat, but she did not see any liquid or ice on the floor. Ms. Akins had worked in the cafeteria throughout the entire |sday at issue, and she had personally performed a routine floor check every ten-to-fifteen minutes throughout the day, checking for spills. At the time of the reported slip- and-fall, it had not been too long since Ms. Akins’ routine floor check. Ms. Akins and the other cafeteria employees had never seen the ice machine leak nor seen anyone else fall by the ice machine.
 
 [1]
 

 Ms. Terrance filed suit against the hospital, alleging negligence due to the existence of an unreasonably dangerous foreign substance dripping from the ice machine onto-the floor and that the hospital had failed to clean it, thereby causing her injury. The hospital denied that the slip-and-fall occurred, and alternatively, argued that it had no knowledge of any foreign substance on the floor and it did not cause any substance to be on the floor. After a bench trial, the trial court rendered judgment in favor of Ms. Terrance, awarding her damages in the amount of $26,910.54, plus interest and all costs.
 
 [2]
 
 In its oral reasons for judgment, the trial court found that “an unreasonable condition” existed around the
 
 *844
 
 ice machine floor that “caused [Ms. Terrance] to slip and fall.” The hospital appealed, asserting that the trial court erred in finding liability on the part of the hospital when there was no evidence that it had created or had any actual or constructive knowledge of the foreign substance on the floor, and there was no evidence of the amount of time the alleged unreasonably dangerous condition existed.
 

 LAW AND ANALYSIS
 

 The legislature has not specifically addressed the burden of proof applicable in a slip-and-fall claim against a hospital. Consequently, jurisprudence addressing the burden placed on a hospital is not affected by the statute governing merchant liability for slip-and-fall claims found at LSA-R.S. 9:2800.6.
 
 See Neyrey v. Touro Infirmary,
 
 94-0078 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214, 1217;
 
 Reynolds v. St. Francis Medical Center,
 
 597 So.2d 1121, 1123 (La.App. 2 Cir.1992). We decline to make a distinction in this case simply because the slip- and-fall took place in the hospital’s cafeteria. Ms. Terrance’s claim is against the hospital, and it is clear that although the hospital operates a cafeteria, the business of the hospital is to render medical services and not to “sell goods, foods, wares, or merchandise” as enumerated in LSA-R.S. 9:2800.6 C(2).
 
 See Reynolds,
 
 597 So.2d at 1122-1123.
 
 See also Blount v. East Jefferson General Hosp.,
 
 04-407 (La. App. 5 Cir. 10/12/04), 887 So.2d 535, 537, where the court discussed a hospital’s duty as being less than that owed by a merchant in a case involving a slip-and-fall in a slippery substance on the floor of a hospital cafeteria. Accordingly, the hospital is not a “merchant,” and we must examine the hospital’s duty in light of the facts of this case under a negligence theory of liability.
 
 [3]
 

 Under a negligence standard, a hospital owes a duty to its visitors to exercise reasonable care for their safety, commensurate with the particular circumstances involved; but the duty owed is less than that owed by a merchant.
 
 Morrison v. Baton Rouge Gen. Med. Cen.,
 
 93-1055 (La.App. 1 Cir. 4/8/94), 635 So.2d 768, 770,
 
 writ denied,
 
 94-1192 (La.7/1/94), 639 So.2d 1165;
 
 Reynolds,
 
 597 So.2d at 1123. As in any slip-and-fall case |sagainst a hospital, Ms. Terrance must show that she slipped, fell, and was injured because of a foreign substance on the hospital’s premises. The burden then shifts to the hospital to exculpate itself from the presumption of negligence.
 
 Neyrey,
 
 639 So.2d at 1216;
 
 Reynolds,
 
 597 So.2d at 1123. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity.
 
 Neyrey,
 
 639 So.2d at 1216;
 
 LeBlanc v. Alton Ochsner Medical Foundation,
 
 563 So.2d 312, 316 (La.App. 5 Cir.1990). And the trial court must consider the relationship between the risk of a fall and the reasonableness of the measures taken by the defendant to eliminate the risk.
 
 Adams v. Louisiana State University Health Sciences Center Shreveport,
 
 44,627 (La.App. 2 Cir. 8/19/09), 19 So.3d 512, 515,
 
 writ denied,
 
 09-2056 (La.11/20/09), 25 So.3d 798.
 

 In the instant case, there was a serious question as to whether there was actually a foreign substance on the hospital’s cafeteria floor where Ms. Terrance was standing next to the ice machine. It
 
 *845
 
 was also disputed as to whether Ms. Terrance actually fell to the floor after she slipped. The only evidence of any foreign substance came from Ms. Terrance’s testimony that she saw water oozing from the sides of the saturated black mat where she allegedly slipped and fell to her right knee and that water was dripping from the ice machine. All of the hospital’s employees who were nearby and who went to the ice machine area to check for a spill and clean up immediately after the incident testified that there was no water or ice on or under the black mat and that the ice machine was not leaking or dripping any liquid. None of the hospital’s employees actually saw Ms. Terrance fall to the floor, but some did see her slip and almost fall. Ms. Terrance testified that she had |fibeen in the hospital’s cafeteria for ice at various times throughout her mother’s hospitalization and she had never before seen water dripping or ice or water on the floor around the ice machine. Ms. Terrance also testified that she did not know how long the ice machine had been dripping or how long the mat had been wet, but she believed it was for a while since the mat was saturated and the water was room temperature. One of the hospital cafeteria employees on duty at the time, Pamela Williams, testified that she did not see any water on the floor or on Ms. Terrance’s clothes immediately after Ms. Terrance informed them that she had fallen.
 

 The trial court listened to all of the evidence regarding the alleged foreign substance on the hospital cafeteria floor before making its credibility determinations and finding of fact that Ms. Terrance slipped and fell in a foreign substance on the floor. While we may have decided otherwise, we find nothing in the record to indicate manifest error regarding this factual finding. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882 (La.1993).
 

 However, we find that the trial court legally erred by stopping its analysis after making the factual finding that Ms. Terrance slipped and fell in a foreign substance, and instantaneously deciding to award damages to Ms. Terrance without first considering whether the hospital could exculpate itself from the presumption of negligence from the slip-and-fall. The trial court should have analyzed and considered whether the hospital acted reasonably to discover and correct the dangerous condition that it could have reasonably anticipated near the ice machine in the cafeteria.
 
 See Neyrey,
 
 639 So.2d at 1216. The trial court failed to determine whether the hospital used reasonable measures to eliminate the risk of someone slipping and falling near the ice machine in the cafeteria.
 
 See Adams,
 
 19 So.3d at 515.
 

 The burden of proof shifted to the hospital to exculpate itself from the presumption of negligence that arose when the trial court found that Ms. Terrance slipped and fell in a foreign substance on the cafeteria floor. If the trial court had properly considered the hospital’s burden, a different outcome should have been rendered in this case. The evidence was unrefuted that the hospital cafeteria supervisor personally conducted routine visual checks for spills over the entire cafeteria floor every ten-to-fifteen minutes throughout the day, including the day in question. The supervisor was on duty that particular day, and she testified that there is a regular set schedule for cleaning and mopping the cafeteria floors, and in addition, she personally cheeks the floors for spills continuously throughout the day. The cafeteria employees verified that the supervisor passes
 
 *846
 
 by the ice machine approximately every ten minutes and if a spill occurs, the employees clean it immediately so that no one falls. If a spill is discovered, it is not left unattended. The supervisor testified that she did not observe any water or ice on or under the black mat in front of the ice machine at any time that particular day.
 

 We find that the undisputed evidence in the record established that the hospital exercised reasonable care for its visitors. The hospital provided proof that it clearly exercised extensive and adequate inspection and cleanup procedures via the testimony of the cafeteria supervisor and employees. Through the personal and attentive floor inspection that occurred every ten-to-fifteen minutes throughout each and every day by the hospital cafeteria | ^supervisor and the swift cleanup procedures followed by the cafeteria employees if a spill was discovered, the hospital exercised reasonable care for the safety of the hospital cafeteria’s visitors, including Ms. Terrance. Furthermore, the evidence reveals that a spill was not evident on the supervisor’s visual check that occurred shortly before Ms. Terrance’s alleged slip-and-fall. Also, there is no evidence that the hospital’s employees caused the alleged spill. The preponderance of the evidence shows that the ice machine was not leaking on the day of the incident and had never leaked before. Simply put, the hospital was required to show that it acted reasonably to discover and correct any dangerous condition, or that it exercised reasonable care for the safety of its visitors. The record supports a finding that the hospital met its burden of proof, and therefore, absolved itself from liability.
 

 CONCLUSION
 

 In conclusion, we find that the trial court erred in holding the hospital liable for the injuries sustained by Ms. Terrance. Accordingly, the judgment appealed from is reversed, and judgment is hereby rendered in favor of the hospital, Baton Rouge General Medical Center, rejecting Ms. Terrance’s demands for damages. All costs of this appeal are assessed to Ms. Marion Terrance.
 

 REVERSED AND RENDERED.
 

 PETTIGREW, J., concurs.
 

 [1]
 

 . Ms. Akins testified at the trial of this matter that she was a 42-year hospital employee and had been the hospital cafeteria supervisor for five years.
 

 [2]
 

 . The damage award includes $10,000.00 for general damages, $6,670.54 for medical specials, and $10,240.00 for lost wages.
 

 [3]
 

 . The trial court specifically ruled in its oral reasons for judgment that the ice machine was not defective or broken. Therefore, a theory of strict liability (where the hospital could be held liable for a defective thing within its care and custody if it was shown that it knew or should have known of the defect and failed to reasonably correct it) is inapplicable.