STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0818

GEVONA RIXNER

VERSUS

OUR LADY OF THE LAKE HOSPITAL, INC. D/B/A
OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER
AND XYZ INSURANCE COMPANY

*Judgment Rendered:* **MAY 1 1 2020**

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No.C646279

The Honorable William A. Morvant, Judge Presiding

* * * * * * * *

Timothy Richardson
Madisonville, Louisiana

Counsel for Plaintiff/Appellant
Gevona Rixner

Douglas K. Williams
Chris D. Billings
Baton Rouge, Louisiana

Counsel for Defendant/Appellee
Our Lady of the Lake Hospital, Inc.

* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

In this hospital slip-and-fall case, the plaintiff appeals a summary judgment that dismissed her claims against the defendant with prejudice. For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 10, 2015,[1] plaintiff, Gevona Rixner, was at Our Lady of the Lake Regional Medical Center ("OLOL") in Baton Rouge with her husband, who was hospitalized at OLOL. On the morning in question, Mrs. Rixner left her husband's room on the third floor, took an elevator to the first floor, and walked to the nearby first-floor cafeteria to get herself breakfast. After spending less than twenty minutes in the cafeteria, Mrs. Rixner left the cafeteria, carrying her food and drink, and began to walk back to the elevator by the same route she had taken on her way to the cafeteria. However, before reaching the elevator on the first floor, Mrs. Rixner slipped and fell on an unknown substance on the floor, allegedly injuring her back, knees, and wrists.

Mrs. Rixner filed suit for the injuries she allegedly sustained in the fall, claiming negligence by OLOL. OLOL filed a motion for summary judgment and supporting documents, and Mrs. Rixner opposed the motion. In support of its motion, OLOL filed excerpts from Mrs. Rixner's deposition, as well as the affidavits of Steve Oquin, who worked at OLOL as an employee of its housekeeping services contractor, and OLOL's environmental safety manager, Rick Boyer. In opposition to OLOL's motion, Mrs. Rixner filed additional excerpts from her own deposition, Mr. Oquin's and Mr. Boyer's depositions, medical records related to the accident, and excerpts from OLOL's housekeeping services agreement. OLOL attempted to file additional summary judgment evidence along with its reply brief, but the trial

---

[1] Although the petition states that the accident occurred on March 15, 2015, this was an error.

court correctly pointed out that under La. C.C.P. art. 966(B)(3), no additional documents may be filed with a reply memorandum, and the trial court declined to consider the additional evidence offered by OLOL.

In the excerpts from her deposition testimony before the court on summary judgment, Mrs. Rixner testified that she never saw any foreign substance on the floor prior to slipping and falling, even though she had walked down the same hallway where the accident occurred on her way to the cafeteria no more than twenty minutes earlier. She described the hallway where she fell as a high-traffic area. Although she did not see anything on the floor prior to falling, she explained that once she was on the ground, she noticed that the floor seemed to be wet. She had no idea where the substance came from, and she denied seeing any leaks, drips, or spills in the area.

Steve Oquin was an employee of Crothall Healthcare, Inc., the company contracted by OLOL to provide housekeeping services on the OLOL premises. In Mr. Oquin's position as Resident Regional Manager at OLOL, he was responsible for managing the housekeeping staff at the hospital. Mr. Oquin explained that in accordance with Crothall's contract with OLOL, the floors in the area where Mrs. Rixner fell were swept, scrubbed using a machine, and squeegeed dry once daily by Crothall personnel.[2] In addition to this daily cleaning, Crothall personnel were available 24/7 to mop up any spills on request, and Crothall's supervisory employees performed periodic inspections in designated intervals[3] to observe the housekeeping staff's competency in cleaning their designated areas. Although Crothall kept records of the periodic inspections performed by its supervisors, the records did not include the specific time or exact location of an inspection, so Mr. Oquin was unable to determine when the hallway where the accident occurred was last inspected by a

---

[2] This daily floor cleaning was done by the night shift, between the hours of 10:00 p.m. and 5:00 a.m. Although Mrs. Rixner was not certain of the time of her slip and fall, she estimated that she went down to the cafeteria around 9:00 or 10:00 in the morning.

[3] Mr. Oquin testified that the supervisors made a minimum of three rounds per eight-hour shift to inspect the housekeeping staff's work.

supervisor. However, Mr. Oquin attested that, to his knowledge, there were no reports of spills or water on the floor in the area where Mrs. Rixner fell on the day in question prior to the incident.

Rick Boyer, OLOL's environmental safety manager, testified that all OLOL employees are trained upon hire, as well as annually, to continuously monitor the floors and report or clean up any spills or other hazardous conditions discovered. Upon discovering any type of hazard (such as a foreign substance on the floor), the employees are taught to clean it up immediately if possible, and if they are not able to do so, they are instructed to contact housekeeping and to remain in the area to guide people around the hazard until housekeeping arrives and cleans up the hazard. Mr. Boyer explained that Crothall's housekeeping employees were always on-site at the hospital and were deployed throughout the facility. Although Mr. Boyer believed that Crothall's policy required its employees to perform periodic floor inspections at OLOL, he had no personal knowledge of Crothall's compliance with its policy. He did not know whether the housekeeping services agreement required Crothall to maintain a log of its periodic inspections, or whether Crothall maintained such a log, but in either case, he had never seen an inspection log. Mr. Boyer testified that he completed training through OSHA and the Joint Commission on safety in healthcare settings and safety walking working surfaces, and he performed periodic inspections of the facility himself to check for safety issues. In his position as environmental safety manager, Mr. Boyer had access to the hospital's internal reports and other records showing maintenance and repair work orders generated in response to any problems or complaints related to the OLOL facilities. He testified that there were no work orders generated in the days leading up to the date of Mrs. Rixner's fall that would suggest that there would have been water on the floor in the area where Mrs. Rixner fell due to a leak or some other maintenance-related issue. In addition, there were no other reported falls or complaints of slipping prior to Mrs.

4

Rixner's fall in the area at issue, which he described as "high traffic" and "a main walkway for visitors coming from the elevators or going to the elevators in the cafeteria or [walking] on the first floor to go to other departments within the hospital . . . [a]nd for team members that may be coming, walking to the cafeteria to get some food or something of that nature."

The portion of the Crothall housekeeping services agreement filed in opposition to summary judgment by Mrs. Rixner sets forth the minimum frequencies at which specified areas of the facility are to be cleaned. The agreement requires the following housekeeping duties to be performed daily, at a minimum, in non-patient areas: sweep hard floors, spot vacuum carpeted areas, spot mop floors to remove spots and spills, and damp mop floors with germicidal solution. In addition to this minimum frequency, the agreement provides that the "[f]loors will be maintained in a clean state, free of build up, dirt, or black marking." The agreement also calls for "Policing Cleaning" in addition to daily cleaning, including "Check sweep floors" and "Spot mop floors," two times per day for the first and second shift and one time per day for the third shift.

Following a hearing on the motion for summary judgment, the trial court granted OLOL's motion, noting that the procedures employed by OLOL to detect and eliminate risks of a fall on its premises were "more than reasonable" under the circumstances, and dismissed Mrs. Rixner's suit with prejudice. Mrs. Rixner appealed.

## DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment procedure is

5

favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).

The burden of proof on a motion for summary judgment rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point to the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Once a motion for summary judgment has been made and supported, the adverse party may not rest on the mere allegations or denials in their pleadings, but their responses must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be rendered against them. See La. C.C.P. art. 967(B).

In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria governing the trial court's determination of whether summary judgment is appropriate. *Salvador v. Main St. Family Pharmacy, L.L.C.*, 2017-1757, p. 4 (La.App. 1 Cir. 6/4/18), 251 So.3d 1107, 1112. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Juge v. Springfield Wellness, L.L.C.*, 2018-0736, p. 4 (La.App. 1 Cir. 2/28/19), 274 So.3d 1, 5, *writ denied*, 2019-0513 (La. 5/28/19), 273 So.3d 309.

6

The legislature has not specifically addressed the burden of proof applicable in a slip-and-fall claim against a hospital. Consequently, jurisprudence addressing the burden placed on a hospital is not affected by the statute governing merchant liability for slip-and-fall claims found at La. R.S. 9:2800.6. *Toussaint v. Baton Rouge General Medical Center*, 2018-0029, p. 3 (La.App. 1 Cir. 6/4/18), 251 So.3d 1151, 1154, *writ denied*, 2018-1107 (La. 10/15/18), 253 So.3d 1301, citing *Terrance v. Baton Rouge General Medical Center*, 2010-0011, pp. 3-4 (La.App. 1 Cir. 6/11/10), 39 So.3d 842, 844, *writ denied*, 2010-1624 (La. 10/8/10), 46 So.3d 1271. Accordingly, because the hospital is not a "merchant," we must examine the hospital's duty in light of the facts of this case under a negligence theory of liability. *Id.*

Under the applicable negligence standard, a hospital owes a duty to its visitors to exercise reasonable care for their safety, commensurate with the particular circumstances involved; but the duty owed by a hospital is less than that owed by a merchant.[4] *Smith v. Northshore Regional Medical Center, Inc.*, 2014-0628, pp. 3-4 (La.App. 1 Cir. 1/26/15), 170 So.3d 173, 176; *Terrance*, 2010–0011 at p. 4, 39 So.3d at 844. The trial court must consider the relationship between the risk of a fall and the reasonableness of the measures taken by the hospital to eliminate the risk. *Terrance*, 2010–0011 at p. 5, 39 So.3d at 844. This duty calls for the hospital to take reasonable measures to monitor its premises for occasional third party spills. *Stogner v. Ochsner Clinic Foundation*, 2018-96 (La.App. 5 Cir. 9/19/18), 254 So.3d 1254, 1258, *writ denied*, 2018-1723 (La. 1/8/19), 259 So. 3d 1023. The determination of whether the hospital failed to take reasonable measures to eliminate the risk of a fall is a question of fact. *Toussaint*, 2018-0029 at p. 3, 251 So.3d at

---

[4] The reason that the duty owed by a hospital is less than the duty owed by a merchant is that the economic circumstances that prompted the heightening of the duty owed by merchants, i.e., merchandising distractions and customer volume, are not present in non-merchant settings such as hospitals. *Holden v. Louisiana State University Medical Center in Shreveport*, 29,268, p. 9 (La.App. 2 Cir. 2/28/97), 690 So.2d 958, 963, *writ denied*, 97-0797 (La. 5/1/97), 693 So.2d 730.

7

1154. Thus, as the mover on the motion for summary judgment, OLOL had the burden of proving that there was no genuine issue of material fact regarding its lack of negligence. See LSA-C.C.P. art. 966(D)(1); *Collins v. Franciscan Missionaries of Our Lady Health System, Inc.*, 2019-0577, p. 5-6 (La.App. 1 Cir. 2/21/20), — So.3d —.

Upon review of the summary judgment evidence before the trial court, we find that OLOL properly pointed out an absence of factual support for an essential element of Mrs. Rixner's claim, i.e., that OLOL failed to take reasonable measures to eliminate the risk of a fall under the circumstances. Once this showing was made, the burden shifted to Mrs. Rixner to produce evidence to establish the existence of a genuine issue of material fact or that OLOL is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1). Mrs. Rixner offered no evidence to show that OLOL failed to take reasonable measures to eliminate the risk of a fall. OLOL is not the insurer of the safety of its visitors; without evidence that OLOL failed to act reasonably under the circumstances, there can be no liability to Mrs. Rixner. See *Dorthlon v. St. Francis Medical Center, Inc.*, 28,426 (La. App. 2 Cir. 6/26/96), 677 So. 2d 654, 659. After a careful de novo review, we find the trial court was correct in its finding that there is no genuine issue of material fact as to whether OLOL failed to take reasonable measures to eliminate the risk of a fall under the circumstances. Thus, summary judgment in favor of OLOL, dismissing the claims against it, is appropriate under the facts of this case.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court granting summary judgment in favor of Our Lady of the Lake Hospital, Inc., d/b/a Our Lady of the Lake Regional Medical Center and dismissing Gevona Rixner's claims with prejudice is affirmed. Costs of this appeal are assessed to plaintiff, Gevona Rixner.

**AFFIRMED.**

GEVONA RIXNER

VERSUS

OUR LADY OF THE LAKE
HOSPITAL, INC. D/B/A
OUR LADY OF THE LAKE
REGIONAL MEDICAL CENTER
AND XYZ INSURANCE COMPANY

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0818

JUN 1 6 2020

## McDONALD, J. AGREES AND ASSIGNS ADDITIONAL REASONS:

I agree with the result reached by the majority, but I take this opportunity to address my concern over some jurisprudence that has flipped the burden of proof in these cases on its head. The highest point of elevation in Louisiana is 535 feet (Mt. Driskell). I seems that we have ventured upon a far greater slippery slope than this altitude would allow. Some courts have determined that once a plaintiff proves that he/she fell due to a foreign substance on the premises of a hospital, this creates a presumption that the hospital was negligent and the burden shifts to the hospital to prove that they were not negligent. I find no reason for this approach to slip-and-fall cases. Hospitals are unique in that they provide several types of services-patient care and procedures, meal services including cafeterias, and retail sales service areas. It seems perplexing that a different rule would apply depending on what area of the hospital the accident occurred. I find this burden shifting idea illogical and disagree with cases that have found such. In attempting to address this issue, I find the brief filed on behalf of the defendant hospital in this case by Douglas K. Williams and Chris D. Billings to be erudite and exceptionally clarifying. I adopt this well written argument that states:

> The issue of who bears the burden of proof in a slip-and-fall claim against a hospital has not been confirmed by the Louisiana Supreme Court or the legislature. As a result, some courts have abandoned the traditional negligence analysis and have instead opted for a burden-shifting approach (which requires that the hospital present evidence to rebut a presumption of negligence that is created once plaintiff establishes that he/she fell due to a foreign substance or condition on the premises). *Connelly v. Veterans Administration Hosp.,*

23 F. Supp. 3d 648, 655- 657 (E.D. La. 2014). This burden-shifting approach, however, is belied by the historical progression of the law, which clearly shows that plaintiff must retain the burden of establishing the elements of her claim in any slip and fall case, including those against hospitals. *Parfait v. Hospital Service Dist. No. 1*, 95-1504 (La. App. 1 Cir. 6/24/94), 638 So. 2d 1140, 1142; *Holden v. La. State Univ. Med. Center in Shreveport*, 29, 268 (La. App. 2 Cir. 2/28/97), 690 So.2d 958, 961.

Prior to the enactment of La. R.S. 9:2800.6 (the "Merchant Liability Statute"), the law dealing with slip-and-fall cases was entirely jurisprudential. Eventually, in *Kavlich v. Kramer*, 315 So.2d 282 (La. 1975), the Louisiana Supreme Court adopted a burden-shifting approach specifically for slip-and-fall claims against merchants. Under that approach, a plaintiff only needed to prove that he or she fell due to a foreign substance on the premises, which created a presumption of negligence on the part of the merchant, then the burden shifted to the defendant merchant to exculpate itself from that presumption of negligence. *Id.* at 285. Again, that approach was developed in the unique context of merchants (specifically a self-service grocery store), which required customers to look for and find objects on their own, some of those objects being placed on shelves of various heights and sizes. *Id.* at 284. The court found that such a setup enticed customers to focus their eyes on the items displayed on the shelves instead of focusing on where they were walking. *Id.* As a result of those unique facts, the court adopted the burden-shifting approach to relieve the plaintiff of having to prove actual or constructive knowledge of the hazard on the part of the defendant merchant.

In 1988, the legislature enacted La. R.S. 9:2800.6, codifying the burden-shifting approach espoused by the Supreme Court in *Kavlich*.[16] However, in 1990, the legislature amended the statute and placed the burden of proof back on the plaintiff (effectively overruling the line of cases created by the unique facts of *Kavlich*).[17] In essence, the legislature took action to extinguish the judge-created law that placed a heavy burden and duty on merchant defendants in slip-and-fall cases, presumably because it did not agree with the scheme that had been adopted from the courts.[18]

Although the Louisiana Supreme Court has never shifted the burden of proof in a slip-and-fall claim against a hospital, some lower courts have revived the old burden-shifting approach from *Kavlich* and have applied it in cases involving hospitals, thereby requiring the plaintiff to prove only that he/she slipped on a foreign substance on the

---

[16] MERCHANTS—LIABILITY FOR INJURIES DUE TO HAZARDOUS CONDITIONS ON PREMISES; BURDEN OF PROOF; EVIDENCE; DEFINITIONS, 1988 La. Sess. Law Serv. 714 (West).

[17] MERCHANTS—LIABILITY FOR NEGLIGENCE CLAIMS—BURDEN OF PROOF; DEFINITIONS, 1990 La. Sess. Law Serv. 1025 (West).

[18] La. R.S. 9:2800.6 was amended again in 1996, but the burden of proof remained (and remains today) with the plaintiff.

premises before shifting the burden to the defendant hospital to exculpate itself from the presumption of negligence by showing it exercised reasonable care to discover and correct the hazardous condition.[19] However, the use of that approach in cases against hospitals is inconsistent with the purpose of the merchant liability statute, and it places an extremely high standard on hospitals, akin to strict liability, which was never contemplated by either the Supreme Court or the legislature.

The First and Second Circuits have addressed the progression of the law in this area and expressly rejected the use of this burden-shifting approach in slip-and-fall claims against hospitals. In *Parfait*, supra, this Court was faced with a case in which the plaintiff stepped on a piece of glass with her bare foot while visiting a patient at the defendant hospital. 638 So. 2d at 1141. The plaintiff's action was dismissed by the trial court on a finding of no liability, and the plaintiff appealed, arguing that the defendant was required to present evidence to exculpate itself from liability. This Court rejected the plaintiff's argument, however, noting:

> Historically, the elevated standard of care applied to merchants by *Kavlich v. Kramer* has not been applied to the hospital setting. The standard applied to hospitals has always been similar to that which is now applicable to merchants under La. R.S. 9:2800.6. <u>Consequently, when there is a condition on the premises which causes an unreasonable risk of harm and is reasonably foreseeable, it must still be shown that the hospital created the condition, had actual or constructive notice of the condition, and failed to exercise reasonable care.</u>

*Id.* at 1142 (citation omitted; emphasis added).

And in *Holden, supra*, the Second Circuit gave a very thorough review of the history of merchant liability cases, and concluded that

---

[19] Prior to the enactment and revision of the Merchant Liability Statute, some appellate courts, relying upon *Kavlich* and its progeny, applied the burden-shifting approach to slip-and-fall cases against hospitals. *See, LeBlanc v Alton Ochsner Medical Foundation*, 563 So.2d 312 (La. App 5 Cir. 5/16/90), *Pfiffner v Touro Infirmary*, 529 So. 2d 102 (La. App. 4 Cir. 7/12/1988). Since then, *Neyrey v Touro Infirmary*, 94-0078 (La. App. 4 Cir. 1994), 639 So.2d 1214 which cites to *LeBlanc*), has been the most commonly cited authority for applying the burden-shifting approach to hospitals. The Fourth Circuit in *Neyrey* felt that prior case-law applying the burden-shifting approach to hospitals was not affected by enactment of the Merchant Liability Statute; however, this statement by the *Neyrey* court was merely <u>dicta</u>. In fact, the court <u>specifically held</u> that it did not need to consider whether a hospital's burden of proof should be lessened to the burden placed on a merchant following enactment of the Merchant Liability Statute, because the plaintiff proved that the defendant hospital had <u>actual notice</u> of the hazardous substance on the floor and proved it failed to exercise reasonable care by not cleaning it up promptly. *Id.* at 1217. In other words, the court did not decide which burden of proof to apply, because the plaintiff met the traditional burden of proof for slip-and-fall cases, which requires the plaintiff to prove every element of his claim. Therefore, reliance on *Neyrey* for the principle that the burden-shifting approach should be applied to cases against hospitals is misplaced.

there should be no shifting of the burden of proof in slip-and-fall actions against hospitals. 690 So.2d at 963-64. The court stated:

> While a slip and fall case in a non-merchant setting is also reviewed under the analysis for negligence discussed above, we have not found that the Louisiana Supreme Court applied the ever-increasing post-*Kavlich* burdens upon non–merchant defendants such as LSUMC between 1975 and 1990. The economic circumstances which prompted *Kavlich*, including the merchandising distractions and customer volume, are not present in a patient's wing of a hospital. Thus, despite *dicta* in certain appellate decisions where the evidence of the defendant's procedures for inspection of their premises was fully presented at trial and analyzed on appeal, a non–merchant such as LSUMC is not required to exculpate itself from a presumption of negligence raised simply by the plaintiff's showing of a fall from a foreign substance whose source is unknown.
>
> * * * *
>
> In every case discussed above, regardless upon whom the technical burden of proof was being placed at the time, there was some evidence before the courts regarding the inspection procedures for the defendant's premises. In the absence of proof that the hazardous spill was caused by the defendants own actions, the duty to keep the premises in a safe condition must be shown to have been breached by some proof of an inadequate inspection procedure. From our review of the slip and fall cases, the burden of producing such evidence is now clearly back on the plaintiff in the storekeeper/merchant context, and it was never removed from the plaintiffs burden in the non-merchant setting such as this case.

*Id.* (citations omitted; emphasis added).

It is clear that the duties once imposed on merchants should not be applicable in a slip-and-fall case against a hospital. Again, at no point has either the Louisiana legislature or the Louisiana Supreme Court ever applied the burden-shifting approach to hospitals or any other non-merchants. Moreover, courts unanimously recognize that a hospital's duty is less than the duty owed by merchants to their patrons.[20] Yet, many of those same courts (including this Court) continue to place the burden of proof on the hospital to exculpate itself from liability in slip-and-fall cases without any discussion or

---

[20] *Terrance v Baton Rouge General Medical Center*, 2010-0011 (La. App. 1 Cir. 6/11/10), 39 So. 3d 842, 844, citing *Blount v East Jefferson General Hosp.*, 04-407 (La. App. 5 Cir. 10/12/04), 887 So.2d 535, 537.

explanation as to why the antiquated rule from *Kavlich* is applicable.[21]

Surely, the legislature did not intend to eliminate the burden-shifting approach for claims against merchants, which owe a higher duty of care than non-merchants, while at the same time allowing the burden-shifting approach to be applied in claims against non-merchants. In fact, the legislature's silence as to non-merchants in the Merchant Liability Statute is presumably only due to a lack of necessity. In other words, because the Louisiana Supreme Court has never applied the burden-shifting approach to non-merchants, there was no need for the legislature to "overrule" that approach as applied to non-merchants. Accordingly, as explained in *Holden, supra,* there is no reason to treat hospitals differently than any other party who is defending against a slip-and-fall action.

As Judge Morvant cautioned during the hearing on OLOL's summary judgment in this case, the effect of applying the burden-shifting scheme to hospital defendants in slip-and-fall cases is to essentially impose the old rule of strict liability.[22] In effect, it would require the *defendant hospital* to prove it acted reasonably to avoid liability, whereas every other slip-and-fall action (whether under La. C.C. art. 2315, La. C.C. art. 2317.1, La. R.S. 9:2800, or La. R.S. 9:2800.6) requires that the *plaintiff* prove every element of their claim. There is simply no justification or legal basis for making hospitals strictly liable for events that occur on their premises, and for requiring them to exculpate themselves from liability.

For these reasons, I believe it is the plaintiff's burden to prove the negligence of the defendant as in any tort suit and no burden-shifting should occur just because the defendant is a hospital.

---

[21] *See, Neyrey,* 639 So. 2d 1214; *Bell v Carencro Nursing Home, Inc.,* 2016-0190 (La. App. 3 Cir 9/28/16), 202 So. 3d 499; *Terrance v Baton Rouge General Medical Center,* 2010-0011 (La. App. 1 Cir. 6/11/10), 39 So.3d 842, *Smith v Northshore Reg'l Med. Ctr. Inc.,* 2014-0628 (La. App 1 Cir. 1/26/15); 170 So. 3d 173, *Toussaint v Baton Rouge Gen. Med. Ctr.,* 2018-0029 (La. App 1 Cir. 6/4/18); 251 So.3d 1151, *Queen v. Woman's Hosp. Found.,* 2018-0222 (La. App. 1 Cir. 10/31/18); 265 So.3d 1.

[22] R. 138; *See also, Connelly,* 23 F. Supp.3d at 659.