McCLENDON, J.
Appellant, Woman's Hospital Foundation ("Woman's Hospital"), appeals a judgment in favor of appellee, Courtney Queen, awarding damages for injuries sustained in a slip-and-fall accident. For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY
The underlying suit arises out of a personal injury suffered by Ms. Queen at Woman's Hospital in Baton Rouge, Louisiana. On December 1, 2015, at around 8:50 p.m., Mr. Isiah Smith, who was employed as a floor tech at Woman's Hospital, was mopping the landing area near the second floor elevators. Ms. Queen, who had been visiting a relative at the hospital, entered the elevator on the hospital's first floor and proceeded up to the second floor.[1] Prior to Ms. Queen exiting the elevator on the second floor, Mr. Smith had set up two (2) wet floor signs by the elevators, one at the outer edge of the elevator landing area and one in front of and in between the two back elevators. Ms. Queen indicated that she saw Mr. Smith as she was exiting the elevators, and surveillance video reflects that she went around one of the wet floor signs. Thereafter, she slipped and fell to the floor causing injuries to her back and left knee.
On July 6, 2016, Ms. Queen filed suit against Woman's Hospital, alleging that Woman's Hospital was negligent for, among other things, creating a hazardous condition and failing to take steps to adequately safeguard the public. Woman's Hospital answered the petition, generally denying Ms. Queen's allegations.
Following a bench trial, the trial court adopted Ms. Queen's proposed findings of fact and conclusions of law and rendered judgment in favor of Ms. Queen and against Woman's Hospital, awarding Ms. Queen $43,837.00 in damages.
Woman's Hospital has appealed, assigning the following as error:
1. The trial court erred in ruling Appellant - Defendant, Woman's Hospital Medical Center, was at fault, as the findings of the trial court ignored the clear law and jurisprudence in regards to alleged slip and falls on the premises of a hospital, and the reasonableness of the measures used by Woman's Hospital Foundation.
2. Alternatively, if this Court determines Defendant - Appellant was at fault, which is at all times denied, the trial court erred in not assessing fault to the Plaintiff - Appellee, Courtney Queen, despite her obvious comparative fault.
*3 3. The Trial Court erred in its excessive award of damages to the Plaintiff - Appellee, considering her limited treatment and injuries.
DISCUSSION
Every act of man that causes damage to another obliges him whose fault it happened to repair it. LSA-C.C. art. 2315. Under a negligence standard, a hospital owes a duty to its visitors to exercise reasonable care for their safety, commensurate with the particular circumstances involved, but the duty owed is less than that owed by a merchant. Terrance v. Baton Rouge General Medical Center , 10-0011 (La.App. 1 Cir. 6/11/10), 39 So.3d 842, 844, writ denied, 10-1624 (La. 10/8/10), 46 So.3d 1271. As in any slip and fall case against a hospital, a plaintiff must show that she slipped, fell, and was injured because of a foreign substance on the hospital's premises. Id. The burden then shifts to the hospital to exculpate itself from the presumption of negligence. Id. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity. Id. The trial court must also consider the relationship between the risk of a fall and the reasonableness of the measures taken by the defendant to eliminate the risk. Id.
On appeal, Woman's Hospital contends that the trial court erred in finding it at fault for Ms. Queen's fall. The hospital does not dispute that there was a foreign substance on the floor of the second elevator landing area. However, the hospital avers that the trial court did not consider the reasonable measures it took to eliminate the risk caused by the dangerous condition. Specifically, the hospital avers that Mr. Smith performed his duties properly and reasonably by placing the wet floor signs in the area at issue prior to Ms. Queen exiting the elevator. Moreover, the hospital avers that the floor was not mopped when the hospital was busy. Rather, Mr. Smith indicated that he shampooed the carpets and rugs in his assigned area after he arrived at work to allow time for things to "die down" before he cleaned the elevator landings "when it's kind of slow." The hospital concludes that the measures taken were reasonable such that it is not responsible for Ms. Queen's fall.
In opposition, Ms. Queen posits that when she got off of the elevator, there was simply nowhere that she could go that was not wet. Moreover, she avers that she did not know that Mr. Smith had mopped between the wet floor sign and back wall when she exited the elevator. Rather, she believed that she was walking on a dry floor. Additionally, Ms. Queen notes that she only took four steps after she exited the elevator before she fell and only two seconds elapsed between her departing the elevator and her fall. Ms. Queen posits that no one riding on the elevator would have had prior warning that the floor was being mopped and was wet. In light of the foregoing, Ms. Queen concludes that the hospital's measures were not reasonable, and it should have done more to warn her of the floor's condition.
In Lee v. Ryan's Family Steak House Inc. , 06-1400 (La.App. 1 Cir. 5/4/07), 960 So.2d 1042, writ denied, 07-1577 (La. 10/12/07), 965 So.2d 405, this court determined that the district court's finding that a restaurant failed to exercise reasonable care under the circumstances was manifestly erroneous. The plaintiff therein slipped and fell at a restaurant buffet, and she testified that she noticed that the floor was slippery and wet. The restaurant had placed a warning cone, which was approximately three (3) feet tall and had a picture of a person slipping, in the aisle where the floor had recently been mopped. Although *4 the plaintiff denied having seen any warning signs or cones in the area, she walked within a foot or two of the cone before she slipped and fell. This court, in reversing the judgment of the district court, stated that:
Finally, we find the trial judge's findings that the cone should have had "directional symbols" or arrows or language showing exactly where to go and where not to go to be unreasonable. A merchant is not the insurer of the safety of its patrons and has only a duty to exercise reasonable care under the circumstances for the safety of its patrons. We find that an approximately three-foot-high yellow warning cone containing the universal symbol for a wet floor to be adequate to alert a patron of a hazardous condition. It would be unreasonably burdensome to require a merchant to have a supply of cones with words and arrows explaining the circumstances of every possible hazardous condition to its customers. While it may have been more prudent for Ryan's to have placed more than one cone in the area after mopping, Ms. Lee's fall would not have been prevented by the placement of multiple cones. She entered the food bar area from the direction of the parallel food bars, walked within a foot or two of the warning cone on her way to the perpendicular food bar, then discovered the water on the floor for herself before turning and returning the same way she came and falling right alongside the warning cone. (Internal citation omitted.)
Lee , 960 So.2d at 1047.
In Mays v. Circle K. Stores, Inc. , 13-1397 (La.App. 1 Cir. 3/24/14), 2014 WL 1175384 (unpublished opinion), this court affirmed the district court's grant of a summary judgment in favor of defendant in a slip and fall case, determining that there was no genuine issue of material fact as to the exercise of reasonable care by the store. Plaintiff therein entered the store, approached a warning sign, which was placed within several feet from the mopped area and facing the store entrance, and passed it on the left. She testified that she saw the sign and recognized it as warning of a wet floor. However, once she arrived to the mopped area, she slipped and fell. This court began its discussion by stating that "[w]hether protective measures in a particular store are reasonable must be determined in light of the circumstances of the case, considering, commensurate with the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store, and other considerations." Mays , 2014 WL 1175384 at p.2. Specifically, this court agreed with the assessment of the district court that the store exercised reasonable care in the placement of the warning sign, stating:
Ms. Mays could not avoid seeing the sign when she entered the store, and she saw the warning sign before she reached the slippery area of the floor. The trial court found it was not necessary for any more signs to be placed due to the small floor space of the store.
Id. at p.3. It was thus determined that the store had sufficiently shown that protective measures were taken to warn customers of the potential hazard and that it did not fail to exercise reasonable care.
Recently, in Toussaint v. Baton Rouge General Medical Center , 18-0029 (La.App. 1 Cir. 6/4/18), 251 So.3d 1151, this court affirmed a judgment rendered in favor of a plaintiff who had slipped and fallen in a hospital. In so holding, this court reasoned:
*5 Despite BRGMC's [the hospital] assertions that it acted reasonably to eliminate the risk because its housekeeping employee followed HHS's [the housekeeping department's] policies and procedures, which were created with safety in mind, the evidence does not support this assertion. Mr. Totten and Ms. Franklin both acknowledged that Ms. Franklin was supposed to approach the spill with her housekeeping cart, including her mop bucket with wringer, additional "wet floor" signs, and anything else she might need to clean the spill, as opposed to just carrying a damp mop and one "wet floor" sign to the area. By failing to bring her cart, Ms. Franklin could not wring out her mop after mopping up the spilled water to avoid leaving excess water on the floor, and she could not use additional "wet floor" signs to warn passersby of the extent of the wet area. In addition, Ms. Franklin's inability to judge the size of the mopped area caused her to make the "questionable" decision to use only one "wet floor" sign in a situation where proper calculation of the size of the area mopped would result in the use of two signs.
Toussaint , 251 So.3d at 1157. Accordingly, this court concluded that it could not "say that the trial court erred in concluding that BRGMC failed to act reasonably to discover and correct the dangerous condition." Id.
In the instant case, the trial court found that Mr. Smith created a trap for those arriving on the second floor elevator landing because those departing the elevator would not be aware that he was mopping until they had exited the elevator at which time they would already be on a wet floor. Further, the trial court found that under the circumstances, Mr. Smith could have stepped forward in the front of the elevator and when the elevator door opened, he could have cautioned occupants that the entire floor was wet.
Considering the entirety of the record, we conclude that the trial court's finding that the measures taken by the hospital were not reasonable is manifestly erroneous. The footprint of the second floor elevator landing area is relatively small. Mr. Smith mopped the area at issue at a time when there were generally fewer visitors at the hospital. Mr. Smith placed two different "wet floor" warning signs to alert the public that the second floor elevator landing area had been or was being mopped. One of the warning signs was placed in front of the elevator Ms. Queen exited, and the surveillance video shows Ms. Queen walking directly past the sign prior to her fall. See Mays , 2014 WL 1175384 at p.3 (more signage not needed where plaintiff could not avoid seeing the sign and given the small space of the floor) and Lee , 960 So.2d at 1047 (wherein merchant not liable where plaintiff denied having seen warning sign, but she walked within a foot or two of the sign before she slipped and fell). Moreover, we note that both Mays and Lee involved merchants who owe a higher duty than a hospital. See Terrance , 39 So.3d at 844.
In addition to the signage, Ms. Queen admits to seeing Mr. Smith when she stepped out of the elevator. The surveillance video shows Mr. Smith with a mop in his hands at the time Ms. Queen exits the elevator. Mr. Smith also used a mop bucket with a wringer and the surveillance video shows that Mr. Smith wrung out his mop prior to mopping the area at issue. Unlike Toussaint , there is no evidence to suggest that Mr. Smith failed to follow the hospital's policies and safety procedures. Additionally, immediately following Ms. Queen's fall, another occupant of the elevator *6 was able to safely traverse the same path taken by Ms. Queen.
Given the signage, the small area, Mr. Smith's presence in the area with the mop and mop bucket when Ms. Queen exits the elevator, evidence that Mr. Smith wrung the mop multiple times before its use, and no evidence that Mr. Smith failed to follow proper procedures, we find that measures taken by the hospital were reasonable. Although Ms. Queen posits and the trial court found that the hospital could have taken additional measures, the hospital need only take measures that are reasonable. Under these circumstances, the trial court was manifestly erroneous in concluding that the hospital was liable for Ms. Queen's fall.
Accordingly, we find merit in Woman's Hospitals first assignment of error. Because we find merit in Woman's Hospital's first assignment of error, we pretermit the remaining assignments of error. As such, we reverse the judgment of the trial court holding Woman's Hospital liable for Ms. Queen's accident.
CONCLUSION
For the foregoing reasons, the trial court's December 4, 2017, judgment in favor of Courtney Queen is reversed. Costs of this appeal are assessed to plaintiff, Courtney Queen.
REVERSED.
Whipple, C.J. concurs in part and dissents in part and assigns reasons.
Higginbotham, J. concurs in part and dissents in part for reasons assigned by C.J. Whipple.
Welch J. concurs and assigns reasons.

Ms. Queen had previously traversed the second floor landing area several times that day.